----------------------------, A MINOR BOY[1] UNDER THE AGE OF 18 YEARS OF AGE, APPELLANT, *v.* STATE OF NEVADA, RESPONDENT.

No. 7116

December 20, 1973 517 P.2d 183

*Charles E. Springer,* of Reno, for Appellant.

*Robert List,* Attorney General, Carson City; *Merlyn H.*

----

[1]It is the practice of this court to omit the minor's proper name.

*Hoyt,* District Attorney, and *Rupert C. Schneider,* Deputy District Attorney, White Pine County, for Respondent.

## OPINION

By the Court, ZENOFF, J:

Alfred was arrested at the White Pine County Race Track on August 19, 1972.[2] The incident began when one of the arresting officers, Robert Piccinini, deputy sheriff of White Pine County, observed Alfred standing by a beer truck at the race track holding a can of beer. As Piccinini started toward him Alfred ran in the other direction and encountered Sheriff Robison who ordered him to stop. The boy did so, turned around and finished the beer while facing the sheriff. The sheriff and Piccinini each took him by an arm and told the boy he was going to jail. He submitted peacefully until a crowd of his peers gathered and taunted him and the officers. A struggle then ensued. Alfred was handcuffed and taken to the sheriff's office. The sheriff initially intended to take the boy home and release him, but one of the officers prevailed upon him to take the boy to the sheriff's office. Alfred was informed of his constitutional rights when he was placed in the sheriff's car. When the arresting officers arrived at the sheriff's office they were met by Officer Romero who recognized Alfred and identified him.

[2]The following is an attempt to reconstruct what actually happened on that day. Despite Officer Piccinini's admission that the officers involved in the case all got together on their report there were numerous discrepancies in their testimony at the hearing.

Before Alfred was booked he was turned over to Officer Romero for a haircut. The boy was taken to a barber shop where he refused to submit to the scissors. He was then taken back to the sheriff's office where Sheriff Robison was recalled from the race track. The sheriff returned in the company of Officer Piccinini and the two men held Alfred down and administered a haircut over the boy's protests. Officer Piccinini testified that all persons booked into the county jail are to get haircuts if they are needed. The officers determined the need. The boy's hair in this instance was shoulder length.

During the entire time that Alfred was in custody no attempt was made to contact his mother or other members of the family or the probation officer or the juvenile detention facility. Alfred was carrying identification but it was not requested until he was booked.

Following booking Alfred was placed in the upper part of the jail where he destroyed various furnishings. He was then transferred to the adult section of the jail. The boy's mother learned that her son was in jail through her daughter who had been so informed by a friend. The mother went to the jail at 20 minutes to 7. She does not say whether this occurred the same evening or the following morning. The sheriff initially refused her permission to see her son. Thereafter, the boy was released to her custody. Officer Piccinini testified that when they brought the boy out his mouth and hands were shaking very badly and that he was taken to the hospital.

On appeal, our function is to insure that the rights of the juvenile were observed in all of the proceedings of the arrest, custody, trial and disposition. The sheriff and his department were honorably motivated to restrain the sale and consumption of liquor by juveniles at the Ely race track festivities. They were alert to step in quickly before the use of liquor by children got out of control.

When Alfred was first spotted with the can of beer and then guzzled it in their presence the officers' reaction to apprehend him and take him home was good judgment. Evidently the jeering and taunting of the gathered juveniles sparked Alfred's violent resistance and the force employed by the officers to reduce him to custody became necessary.

From that point, however, failure to notify his mother or his uncle or to take him to the juvenile facilities separate from the adult place of detention was not justified. Forcing a hair shearing upon him was unnecessary and unwise. The hair was not unclean and Alfred was not an adult prisoner nor had he even been booked. To youngsters hair style is important. It is not

The Scarlet Letter. The wearing of long hair is not a crime. This apparent reaction to the boy's conduct could do little to enhance his respect for law and order, probably otherwise.

He was charged at trial with being under the influence of intoxicating liquor, destroying county property and resisting arrest. He admitted at trial the destruction of a light bulb and other items of equal value in anger at the county jail, that he purchased the beer at the race track and that he resisted arrest. No defense is made to the boy's conduct. Counsel appears to present to this court these facts and proclaims that treating a young person in this manner was grossly unfair.

 ██

While the officers had the right to take into custody a juvenile found violating the law, the juvenile is entitled to the same Fourth and Fourteenth Amendment protection afforded to adults (see In re Gault, 387 U.S. 1 (1966); cf. Marschall v. City of Carson, 86 Nev. 107, 464 P.2d 494 (1970); In re Moten, 242 So.2d 849 (La.App. 1970); State v. Eastmond, 499 P.2d 276 (Utah 1972); In re Harvey, 295 A.2d 93 (Pa. 1972); see also, Juvenile Comprehensive Plan, prepared for the Nevada Commission on Crime, Delinquency and Corrections 41 (June 1973)). Furthermore, the provisions of NRS 62.170 require that a police officer immediately notify the parent, guardian or custodian of the child taken into custody. Alfred was without his mother or anyone else to act on his behalf for a period of 3 hours to possibly 12 hours. He was not taken to the juvenile detention facility as he should have been nor was he permitted to call an attorney until after he was booked and the harm had been done. The requirement of fairness by police in dealing with a youth cannot be accomplished in this manner. The enlargement of discretionary police power in derogation of statutory rights entails the danger of inconsistent law enforcement and the resultant evils of disrespect and distrust of legal institutions. See The Beginning of Juvenile Justice, Police Practices, and the Juvenile Offender, 22 Vanderbilt L.Rev. 567, 581 (1969), citing President's Comm'n on Law Enforcement and Administration of Justice, Task Force Report: Juvenile Delinquency and Youth Crime 10 (1967); Due Process as a Gateway to Rehabilitation in the Juvenile Justice System, 49 Bos.U.L.Rev. 62, 65 (1969); see also, In re Gault, supra, at 26.

Alfred is now over 18 years of age. His juvenile record would indicate that had his rights been observed the disposition by the trial court would have been warranted. Now because he

is past 18 years of age, he cannot be ordered to the Nevada Training School at Elko.

Had the statutory requirements of notification of his mother been observed or an attorney called, the forced haircut would probably not have occurred. Without it the destruction of property brought on by the boy's frustration might not have resulted. We do not know what effect that conduct had upon the trial court's decision to confine the boy at Elko. We decline to recognize the charge of destruction of county property because it flowed from the failure to observe the requirements of law when Alfred was taken into custody as a juvenile.

Since the boy is now over 18 years of age and different disposition must be made, we remand to the trial court for the purpose of appropriate disposition.

Remanded.

THOMPSON, C. J., and MOWBRAY, GUNDERSON, and BATJER, JJ., concur.