**In the Matter of D. H., a minor, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2837.**

Supreme Court of Alaska.

March 21, 1977.

Dick L. Madson, Cowper & Madson, Fairbanks, for appellant.

Jane F. Kauvar, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Douglas Mertz, Asst. Atty. Gen., Fairbanks and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

BOOCHEVER, Chief Justice.

D.H. appeals from a judgment which waived jurisdiction under the Children's Rules over him at a time when he was 16 years old and permitted the state to prosecute him as an adult. He raises issues as to whether it was error: (1) to permit a probation officer to offer an opinion on his amenability to treatment, (2) to admit into evidence a police officer's testimony regarding other acts or crimes D.H. stated he considered committing and (3) whether the evidence presented supports the findings of fact and order waiving jurisdiction under the Children's Rules although no inquiry was made into D.H.'s background.

We find no error as to the first two allegations, but in view of the serious consequences of prosecuting a 16-year-old as an adult, we find that the evidence presented to the trial court was inadequate for a waiver of jurisdiction under the Children's Rules.

Between January 1, 1976 and February 11, 1976, D.H., who was then 16 years old, participated in three armed robberies. A

considerable amount of planning went into at least one of the robberies.[1]

Approximately the first half of the hearing was devoted to establishing probable cause for believing D.H. had committed the charged offenses. At the close of this portion of the hearing, the trial court stated that sufficient evidence had been presented on this issue to justify a finding of probable cause. This holding is not questioned on appeal.

The evidence presented during the remainder of the hearing was devoted to establishing whether the defendant was amenable to treatment under the jurisdiction of the Children's Rules.

Thekla Johnson, a probation officer, testified at the hearing.[2] Ms. Johnson had not interviewed D.H., his parents, teachers or employers. Based solely on what she heard at the hearing pertaining to the offenses, her knowledge of the correctional facilities available for Alaskan juveniles and her experience in handling some 150 to 200 juvenile cases, she expressed the opinion that D.H. was not amenable to treatment under the jurisdiction of the children's rules.

▮ It is contended that the court erred in permitting Ms. Johnson to express that opinion. We have adopted a liberal policy towards the admission of expert testimony,[3] particularly in nonjury cases.[4] Ex-

1. As a former employee, D.H. had knowledge of the closing time of the Safeway store and apparently planned the robbery for that time. A snowmobile was used to leave the scene so that the robbers could return to Ft. Richardson without going through the main gate. D.H. furnished the weapons which he took from his father's collection.

In his statement to the police, D.H. indicated that while he was attempting to pull a telephone wire from the wall during the robbery of Shakey's Pizza Parlor, his weapon accidentally discharged into the counter.

D.H. and another person also robbed the Earthway's Leather Shop, taking cash and five leather jackets by threatening the female clerk with a firearm. Stockings and ski masks were utilized as disguises in all the robberies.

On the night that he was arrested, D.H. stated that he had been planning to commit another robbery with guns which were to have been stolen from a gun shop. The attempted robbery of the gun shop was thwarted two nights before his arrest by law enforcement officers. During the attempted gun shop robbery, D.H. and his accomplices had used a stolen jeep and had decoyed the police to another area by means of a false citizen's band radio report. D.H. also admitted that he had planned other robberies for the future, including one of the Alyeska Pipeline Company's payroll.

2. Ms. Johnson's testimony may be summarized as follows. There were at that time three juvenile correctional facilities in Alaska, and, in addition, one was available in Colorado for overflow. Two of the three Alaskan facilities possessed "open settings," of which one tended to have Native populations. McLaughlin, the third Alaskan institution, has lockup or detention facilities which are used for the first 30 days of the program. It is the only one which is usually appropriate for serious delinquency problems. Counseling at McLaughlin is more intensive than that provided at the other two institutions. Average stays at McLaughlin range from six months to a year. Her experience with McLaughlin was limited to juveniles from the Fairbanks area. She did not know "what types of crimes the various offenders from Anchorage had committed prior to their being adjudicated and sent to McLaughlin."

Ms. Johnson expressed serious reservations concerning the adequacy of McLaughlin for treating "sophisticated juveniles" who were involved in heavy crime or who possessed a long-term established delinquent behavior pattern. She stated that she had heard that the Colorado facility was similar to McLaughlin. Her reservations were based on her observations that sophisticated juveniles could "breeze through" the program at McLaughlin in just four months, because they were adept at quickly learning how to "play the game." She further stated that the presence of sophisticated offenders could have serious detrimental effects on the less sophisticated offenders at McLaughlin. She also noted that the more sophisticated offenders were less likely to benefit than those who were less so, essentially because they could temporarily modify their behavior just for the sake of getting out without ever recognizing their problems or developing the desire to improve themselves. Ms. Johnson acknowledged that it was best from a rehabilitation standpoint for an offender to admit his crimes at the outset, which D.H. did.

3. See Adkins v. Lester, 530 P.2d 11, 17 (Alaska 1974), rehearing denied, 532 P.2d 1027 (1975); Haisley v. Grant, 486 P.2d 367, 371 (Alaska 1971); Maddocks v. Bennett, 456 P.2d 453, 456 (Alaska 1969).

4. See State v. Phillips, 470 P.2d 266, 271 (Alaska 1970).

pert testimony is admissible if it would appreciably assist the trier of fact in deciding the issue in question.[5] The opinion must be based on sufficient facts,[6] but those facts need not be within the first-hand personal knowledge of the witness.[7]

■ The decision to admit opinion testimony into evidence lies within the sound discretion of the trial judge and is reviewable only for abuse of discretion. In this case, the trial court was aware of the basis for Ms. Johnson's opinion and was able to evaluate the weight to be given to her testimony. Ms. Johnson had supervised a number of cases involving minors, was familiar with Alaskan facilities for treatment and with the facts pertaining to the offenses committed by D.H. While we find it surprising that a probation officer would express an opinion as to D.H.'s amenability to treatment without benefit of a personal interview or any meaningful background information, we cannot say that it was error to permit the testimony.

■ Nor do we find that the trial court committed error in allowing a police officer to testify as to D.H.'s admission that he had planned additional crimes. This information was relevant to D.H.'s amenability to treatment and could have supported either side of the question. The evidence cast light on the extent of D.H.'s inclination towards anti-social conduct. At the same time, D.H.'s confession on the day of his apprehension and his willingness to reveal his plans could be considered an indication that he was not so hardened and sophisticated as not to be amenable to treatment as a minor.

D.H.'s remaining contention is that there was inadequate evidence to support the waiver of jurisdiction. Under Alaska law, if at a hearing the court finds probable cause that a minor under 18 years of age is

delinquent and that he is not amenable to treatment under the provisions of the act relating to juveniles, it orders the case closed. Thereafter, the minor may be prosecuted as an adult.[8] AS 47.10.060(d) specifies:

A minor is unamenable to treatment under this chapter if he probably cannot be rehabilitated by treatment under this chapter before he reaches 21 years of age. In determining whether a minor is unamenable to treatment, the court may consider the seriousness of the offense the minor is alleged to have committed, the minor's history of delinquency, the probable cause of the minor's delinquent behavior, and the facilities available to the division of youth and adult authority for treating the minor.

Children's Rule 3 provides in relevant part:

(h) *Findings of Fact.* The order closing the case must be accompanied by written findings of fact clearly demonstrating that:

(1) The court made full inquiry into the allegations of the petition,

(2) The question of waiver of children's proceedings and of closing the children's case were given careful consideration by the court, and

(3) All statutory conditions for waiver of child proceedings and closing the case were established.

The trial judge's findings of fact, entered on the record, show that he gave careful consideration to the question of waiver. A serious question is presented, however, as to whether statutory conditions for waiver were adequately established.

■ Considering each element of AS 47.-10.060(d), we note first the seriousness of the offenses committed by D.H., Armed robbery, with its likelihood of violence, is

---

5. *Ina Life Insurance Co. v. Brundin*, 533 P.2d 236, 243 (Alaska 1975); *Crawford v. Rogers*, 406 P.2d 189, 192 (Alaska 1965).

6. *See Haisley, supra* at 371.

7. *See Crawford, supra* at 191.

8. AS 47.10.060(a).

among our most serious crimes.[9] Second, D.H. has no significant past history of delinquency, and no efforts have previously been undertaken to furnish him treatment. He had but one prior difficulty, an incident when he threw eggs at a building. D.H. was placed on open probation [10] for a period of six months. Upon the successful completion of that period, the record of delinquency was to be expunged, and the judge so ordered. Third, the testimony concerning the facilities available for treating the minor was adequate for the court to fully consider the issue.

The court, however, had little information concerning the probable cause of D.H.'s delinquent behavior. It was aware only of the nature of the offenses, the fact that D.H. was apparently not in need of funds and of his statement that he regarded the commission of the crimes as a game. We must determine whether this information was sufficient to satisfy the requirements of AS 47.10.060(d).

In two prior decisions, we have dealt with the problems presented at waiver hearings. In *P.H. v. State*, 504 P.2d 837, 845–46 (Alaska 1972), we read AS 47.10.060 so as to require the court in most cases to go beyond the circumstances surrounding the alleged delinquent acts and the age of the child. Substantial evidence must be presented before jurisdiction may be waived, and, therefore:

> [t]here must . . . be a thorough examination of the child, his background and alternative strategies of rehabilitation short of adult criminal treatment. Lacking such an examination, the children's court has no evidentiary basis for the decision.

The requirement of a thorough examination of the child and his background was again emphasized in *R.J.C. v. State*, 520 P.2d 806, 807 n.3 (Alaska 1974).

In *P.H.*, the court relied on the serious nature of the crimes charged and the short time remaining before P.H.'s 19th birthday to justify waiver. Although there was no detailed evidence concerning P.H.'s background, we affirmed the decision, focusing on the bizarre and sadistic nature of the offense,[11] the fact that it was committed within three months of P.H.'s 18th birthday and the obvious need for lengthy treatment.

Comparing the facts of this case with the situation presented in *P.H.*, we find several significant distinctions. Although D.H.'s offenses are very serious, they do not evidence the depravity found in *P.H.* Moreover, D.H. was only 16 years old at the time of commission of the offenses. Under AS 47.10.080(b)(1) a minor may be committed to the Department of Health and Social Services for an indeterminate period of time not to exceed his 19th birthday, plus an additional year upon petition by the Department when the minor has failed to respond to treatment. Thus, at the time of D.H.'s hearing, he could have been subject to commitment for two and one-half years. In contrast, P.H. was almost 19.

The principal reason given for the waiver of juvenile jurisdiction is the possibility that D.H. may not be held in custody at McLaughlin Youth Center for a sufficiently long period of time to assure meaningful rehabilitation. D.H.'s guilt of serious offenses is not at issue, and, if treated as an adult, he is almost certain to be convicted. Thus, he is likely to receive a substantial period of incarceration with older hardened criminals. The consequences of placing a youth of impressionable age in such an environment may readily be envisioned.

Regardless of whether treated as an adult or a juvenile, D.H. will be released

---

9. "The Court has affirmed substantial sentences where violence has actually occurred or where life has been endangered . . . ." Erwin, R., Five Yeas of Sentence Review in Alaska, 5 U.C.L.A.–Alaska L.Rev. 1, 13 (1975).

10. Open probation is without supervision. If during the time prescribed, the individual is not charged with an offense, the probation is regarded as being successfully completed.

11. The facts of the offense—which involved kidnapping and torture—are related at 504 P.2d 840. They are of an entirely different nature from those involved here.

from incarceration before many years. Society will be ill served if he is returned as a hardened criminal. We do not have before us a case where a youth has previously been under supervision or confinement without altering patterns of anti-social conduct. In consideration of the serious offenses committed and planned, it may be that D.H. is not amenable to treatment as a juvenile, but no adequate record was presented at the waiver hearing.

We find that due to the lack of a thorough examination, there was insufficient evidence to support a waiver of jurisdiction. At the very least, there should have been some effort to have the probation officer or some other qualified person conduct an in-depth interview with D.H. His parents should also have been consulted. It was error not to require a thorough examination of D.H. and his background.

We remand the case for further proceedings in accordance with this opinion.[12]

BURKE, Justice, with whom CONNOR, Justice, joins, dissenting in part.

I respectfully dissent from the majority view that there was insufficient evidence to support a waiver of juvenile jurisdiction.

AS 47.10.060(a) provides:

If the court finds at a hearing on a petition that there is probable cause for believing that a minor is delinquent and finds that the minor is not amenable to treatment under this chapter, it shall order the case closed. After a case is closed under this subsection, the minor may be prosecuted as if he were an adult.

There is no question concerning the trial court's findings that there was probable cause for believing that D.H. is a delinquent. The only question is whether it was correct in its further finding that D.H. is not amenable to treatment. AS 47.10.-060(d) provides that in making that finding

. . . [T]he court may consider the seriousness of the offense the minor is alleged to have committed, the minor's history of delinquency, the probable cause of the minor's delinquent behavior, and the facilities available to the division of youth and adult authority for treating the minor.

In *P.H. v. State*, 504 P.2d 837, 845–46 (Alaska 1972), we commented on the requirements of AS 47.10.060(d), saying:

All four factors need not be resolved against the child to justify waiver. Nor is there value in requiring the children's court to make an arithmetic calculation as to the weight to be given each factor. There must, however, be a thorough examination of the child, his background and alternative strategies of rehabilitation short of adult criminal treatment. Lacking such an examination, the children's court has no evidentiary basis for the decision.

As I read the record the trial court thoroughly examined D.H., his background, and the alternative strategies of rehabilitation short of adult criminal treatment. Such examination was made carefully and with full appreciation of the possible consequences, both for D.H. and society. Based upon that examination the trial court reached the conclusion that D.H. is not amenable to treatment.

I would affirm the judgment of the court below.

---

12. The court should also consider D.H.'s conduct during the period since the prior hearing, in determining whether children's proceedings should be waived. Additionally, it may consider the desirability of a psychiatric examination of D.H.