## MARVIN, A MINOR, Appellant, v. THE STATE OF NEVADA, Respondent.

### No. 10612

December 11, 1979                              603 P.2d 1056

*David Hamilton,* Reno, for Appellant.

*Richard Bryan,* Attorney General, Carson City; *Calvin R. X. Dunlap,* District Attorney, and *Bruce R. Laxalt,* Deputy District Attorney, Washoe County, for Respondent.

838

## OPINION

By the Court, MANOUKIAN, J.:

This is an appeal from an order certifying appellant from juvenile court to stand trial in district court as an adult. Two questions are presented for our determination. They are: (1) Whether the district court erred in basing in part its determination to certify appellant as an adult on statements allegedly obtained in violation of appellant's fifth amendment right to silence; and (2) Whether the juvenile probation department conducted the required "full investigation" precedent to such certification.[1] We find no error and affirm the decision of the lower court.

The appellant, nearly eighteen years of age, was arrested for burglary and possession of burglary tools—felonies—in Carson City in the early morning hours of Sunday, October 2, 1977. Shortly thereafter, an arraignment was held before a magistrate in Carson City resulting in appellant's being transferred to the Washoe County Juvenile Detention Center at Wittenberg Hall in Reno. A Carson City probation officer

---

[1]NRS 62.080 provides in pertinent part:

If a child 16 years of age or older is charged with an offense which would be a felony if committed by an adult, the juvenile division of the district court, *after full investigation,* may in its discretion retain jurisdiction or certify the child for proper criminal proceedings to any court which would have jurisdiction of such offense if committed by an adult. (Emphasis added.)

attempted to contact appellant's parents, but found that they were out of town.[2] Subsequently, Washoe County juvenile probation officer, Gordon Woodard, in an unsuccessful attempt to contact the parents, left a message with appellant's sister that appellant was being detained at Wittenberg Hall.

After being advised of his rights,[3] the appellant made several inculpatory statements incriminating not only himself, but several adult persons in relation to a number of burglaries of residences and businesses. Additionally, he directed the police to several items of stolen property—products of the burglaries.

Although they arrived home on Monday, October 3, appellant's parents did not go to Wittenberg Hall until Tuesday, October 4. They were not permitted to visit appellant at that time because he was being questioned regarding the admitted burglaries by a Washoe County Sheriff's detective. Appellant was also denied use of the telephone during his detention.[4] A detention hearing was eventually held and on Thursday, October 6, appellant was released to his parents.

---

[2]NRS 62.170(1) provides in pertinent part: "When a child is taken into custody the officer shall immediately notify the parent, guardian, or custodian of the child. . . ."

[3]*See In re* Gault, 387 U.S. 1, 41 (1967); Miranda v. Arizona, 384 U.S. 436, 478-79 (1966).

[4]Appellant had not yet been adjudicated to be triable as an adult during these pre-waiver stages. In A Minor v. State, 89 Nev. 564, 517 P.2d 183 (1973), we stated, "While the officers had the right to take into custody a juvenile found violating the law, the juvenile is entitled to the same Fourth and Fourteenth Amendment protection afforded to adults. . . ." *Id.* at 567, 517 P.2d at 185 (citations omitted). In recognizing the foregoing, we intimate no view regarding the question of admissibility of the confessions in subsequent criminal proceedings, but are constrained to condemn what we perceive to be the flagrant disregard by the probation and police authorities of NRS 62.170 (1), by not allowing the parents to see the child and apparently holding appellant incommunicado during his approximate four days detention. In this age of ubiquitous standardization and relative sophistication in probation and peace officer training, it is difficult to conceive of such a blatant violation of the relevant juvenile statutes. Nevertheless, the breach of the statutory mandates do not alone invalidate the certification order. *Cf.* A Minor v. State, 89 Nev. at 567-68, 517 P.2d at 185 (confinement of a 16 year old arrested for being under the influence of alcohol, in adult jail, without notification of responsible custodian or probation officer, held improper conduct, but not error).

Because of a child's presumed immaturity, special safeguards should be placed around a police interview in investigating a delinquent act since, at that time, it is not known whether or not the juvenile court will retain jurisdiction over the case or permit trial in a criminal court. NRS 62.080. It cannot always be assumed that the police interview will lead only to a non-criminal proceeding.

Before being interviewed, a child should be advised of his rights and cautioned that any answers may be used in a criminal court as well as before the juvenile court. Special efforts should be made, especially in the case of young children, to interview the juvenile only in the presence of a parent or guardian.

The Carson City charges were dismissed, but appellant was charged by Washoe County authorities on October 5, 1977, as a result of the information derived from appellant's statements. On October 13, a petition was filed in the Juvenile Department of the District Court, charging appellant with fifteen felony counts consisting primarily of burglary and grand larceny. NRS 205.060, 205.220. A motion was also filed requesting that appellant be ordered to stand trial as an adult. The judge then ordered that the Washoe County Juvenile Probation Department conduct an investigation and submit a report to the court pursuant to NRS 62.080.

Following the investigation, a report consisting of a study and analysis of appellant's home life, school and offense record and other relevant background information was submitted by the Juvenile Probation Department. The report was based largely upon information obtained from appellant during his confinement at Wittenberg Hall.

A hearing on the motion for certification was held December 21, 1977, appellant being represented by retained counsel, after which the court in a detailed order waived its "exclusive original [juvenile] jurisdiction," NRS 62.040, requiring that appellant stand trial as an adult. Although testimony of appellant's admissions was not the sole evidence incriminating appellant, it played a major role in the lower court's determination to waive its juvenile jurisdiction.

1. *The Fifth Amendment Claim.*

The appellant contends that the confessions relied upon by the trial court in waiving juvenile court jurisdiction were admitted in violation of his fifth amendment right against self-incrimination. Due to the posture of the instant proceeding, and to the fact that we are not here concerned with guilt or innocence but rather with appellant's knowledgeability and amenability to juvenile treatment, the fifth amendment claim becomes irrelevant.[5]

---

Harling v. United States, 295 F.2d 161, 163–64 n. 12 (1961). Although a juvenile does have the capacity to make a voluntary confession without the presence or assent of a parent or guardian, and a confession is not psychologically coerced or involuntary simply because no adult assented to it, Stokely v. State of Maryland, 301 F.Supp. 653, 660 (D.Md. 1969); People v. Lara, 432 P.2d 202, 212 (Cal. 1967); *In re* J.F.T., 320 A.2d 322, 324 (D.C.App. 1974), it is preferred that a responsible custodian be present. Absent extraordinary circumstances, this should always be the policy when a child is being questioned or a formal statement concerning his participation is being taken. Clearly, the more serious the offense and the younger the accused, the greater the precaution which should be taken in the interrogation process.

[5]Even had we determined it necessary to discuss the question of voluntariness, the extreme paucity of the factual record does not invite that inquiry. Absent proper objection or the existence of plain error, NRS 47.040(1), this

In Kent v. United States, 383 U.S. 541 (1966), the United States Supreme Court considered the requirements for a valid waiver of exclusive jurisdiction of a juvenile court as a condition to the trial of a juvenile in an adult criminal proceeding. While the Court's decision involved the language of a statute, it stressed the necessity that the basic requirements of due process and fairness be satisfied in such proceedings. *Id.* at 553. *See In re* Gault, 387 U.S. 1, 30-31 (1967). *Kent,* however, neither expressly nor impliedly extended the fifth amendment right against self-incrimination to waiver hearings.[6]

The principles of "fundamental fairness" govern in fashioning procedures and remedies to serve the best interests of the child. Pee v. United States, 274 F.2d 556, 559 (D.C.Cir. 1959). And, while we recognize that a waiver involves a "critically important" action, Kent v. United States, 383 U.S. at 553, the consequence of a certification is not necessarily a condemnation of the accused. Therefore, the informal nature of the waiver hearing which differs from a criminal proceeding, precludes imposition of strict evidentiary standards. The court in a waiver hearing can consider any material, relevant evidence, but fundamental fairness demands that such evidence be founded on accurate and reliable information. People v. Chi Ko Wong, 557 P.2d 976, 989-90 (Cal. 1976). *See also* State v. Piche, 442 P.2d 632, 635-36 (Wash. 1968).

Because of the unique role of a trial judge in the non-adversary confidential atmosphere of the juvenile court, State v. Loyd, 212 N.W.2d 671, 674 (Minn. 1973), coupled with the fact that the confessions have *not yet* been sufficiently asserted to be involuntary or unreliable, we find no error. The accused still has access to the panoply of legal and constitutional rights available to adult defendants, including trial by jury. This is not, at least at present, a case involving the admissibility, in a state criminal proceeding, of an inadmissible confession. *Cf.*

court has held that we are precluded from considering the claim. Septer v. Warden, 91 Nev. 84, 86, 530 P.2d 1390, 1391 (1975); Clark v. State, 89 Nev. 392, 393, 513 P.2d 1224, 1224-25 (1973). *See* United States v. Petrucci, 486 F.2d 329 (9th Cir. 1973), *cert. denied,* 416 U.S. 937 (1974); Thomas v. State, 93 Nev. 565, 571 P.2d 113 (1977).

[6]Recently, the United States Supreme Court determined that jeopardy attaches with the initiation of an adjudication of responsibility in a juvenile delinquency proceeding and that no waiver of jurisdiction can occur thereafter. Breed v. Jones, 421 U.S. 519, 531 (1975); NRS 62.195(3). But even though that claim of double jeopardy fell under the fifth amendment, the Court has never held that the consideration of a questionable confession in a non-adjudicatory waiver hearing invalidates the waiver under that same amendment.

Haley v. Ohio, 332 U.S. 596 (1948) (unreasonable police conduct in obtaining confession violated due process); A Minor v. State, 89 Nev. 564, 517 P.2d 183 (1973) (unreasonable police tactics violated juvenile's fourth amendment rights).

A juvenile waiver or transfer hearing is non-adjudicatory in that no inquiry is made into the guilt or innocence of the juvenile. The sole inquiry at such a hearing is to determine whether the interests of the juvenile and of society would be better served by subsequent adjudication in the juvenile or adult court system. Once a child commits an offense, he is in effect exempt from the criminal law unless the juvenile court waives its jurisdiction. During that period, the juvenile code governs and, irrespective of *In re* Gault, 387 U.S. 1 (1967), *In re* Winship, 397 U.S. 358 (1970), and McKeiver v. Pennsylvania, 403 U.S. 528 (1971), and the fact that substantially all of the constitutional rights granted to adults in criminal proceedings now belong to accuseds in juvenile proceedings, juvenile proceedings in Nevada continue to be civil in nature. NRS 62.193(1), 62.195(3), 62.200(3).

It is arguable that because children, generally speaking, are exempt from criminal statutes, it is unfair to allow admissions made by them in the non-criminal and non-punitive setting of juvenile proceedings to be used subsequently for the purpose of securing their criminal conviction. Even though the juvenile court was made to serve as somewhat of an adjunct to the adult criminal process, given the record presently before us, we are satisfied that the principles of "fundamental fairness" were not violated in this proceeding.

Returning to the question of reliability of the statements—the information upon which the waiver was based—it is apparent from the record, notwithstanding the evidence of police and probation statutory improprieties, that appellant's statements *for the sole and preliminary purpose of waiver,* are reliable. These statements were corroborated by the fact that the police were able to find physical evidence of the burglaries from what appellant had told them.[7] Considering these statements, coupled with the evidence that appellant was nearly eighteen at the time of his detention; appellant was implicated in a series of commercial and residential burglaries which

[7]Although we do not reach the voluntariness issue from a fifth amendment standpoint, we do believe that information obtained from a confession in the context of a waiver hearing may be found reliable in satisfaction of fourteenth amendment due process requirements. *See* State v. Piche, 442 P.2d at 632. In *Piche,* the court stated that the fact that the non-adversary transfer hearing does not directly result in confinement, punishment, or a determination of guilt

occurred over an extended period of time, *cf.* Matter of Welfare of Dahl, 278 N.W.2d 316, 318–20 (Minn. 1979) (no significant prior history of misconduct); the trial court found that appellant evidenced maturity and sophistication, the crimes were committed with obvious premeditation and deliberation; appellant's associates in crime are adults; and appellant is not inexperienced in delinquency arrest procedures, reliability at this procedural stage is apparent.

Here, the statements are relevant to determining the best interests of the juvenile and of society, and the trial court properly admitted them. *In re* Harbert, 538 P.2d 1212, 1218 (Wash. 1975); State v. Piche, 442 P.2d 632, 636 (Wash. 1968). *See* People v. Morris, 226 N.W.2d 565 (Mich.App.), *cert. denied,* 423 U.S. 849 (1975). In the instant case, this permitted use has no cognizable effect on the juvenile court's *parens patriae* relation to the child, Kent v. United States, 383 U.S. at 554; Kline v. State, 86 Nev. 59, 62, 464 P.2d 460, 462 (1970), and is compatible with the non-criminal philosophy which underlies the Juvenile Court Act. There having been no suppression hearing below, this determination is, of course, without prejudice to appellant's right to move to suppress in the criminal proceeding. *See* NRS 47.090, 174.125(1).

 2.   *The Question of a "Full Investigation."*

Appellant next contends that the juvenile department failed to make a "full investigation" pursuant to NRS 62.080, because it did not extend its inquiries beyond the circumstances surrounding the series of burglaries. This contention is without merit.

In Kline v. State, 86 Nev. 59, 464 P.2d 461 (1970), and Lewis v. State, 86 Nev. 889, 478 P.2d 168 (1970), we adopted the criteria established by Kent v. United States, 383 U.S. 541 (1966), for determining a valid waiver of jurisdiction from juvenile court. The order appealed from is thorough and indicates that the judge carefully considered the character and disposition of the appellant, together with the nature of his past and present offenses, his amenability to juvenile treatment, and each of the remaining elements enunciated in Kent v. United States, 383 U.S. at 565–68, and Lewis v. State, 86 Nev. at 893 n.2, 478 P.2d at 170–171 n.2. *Accord,* Martin v. State, 94 Nev. 687, 585 P.2d 1346 (1978). The juvenile court has considerable latitude in determining whether it should retain or waive jurisdiction. Kent v. United States, 383 U.S. at 552–53.

coupled with the additional fact that the admission was not strongly urged to be a product of physical or psychological coercion, meant that the consideration of self-incriminating statements did not violate constitutional safeguards. *Id.* at 635–36.

The instant order waiving jurisdiction provides with ample specificity the reasons for the appellant's certification as an adult. Appellant was certified to be tried as an adult primarily because the juvenile court determined that he was not amenable to juvenile treatment, particularly within the period remaining before the juvenile court's jurisdiction is terminated.[8] The trial court's careful evaluation plainly meets the statutory requirement of "full investigation." We find no error.

We affirm the order of the district court, waiving its juvenile jurisdiction.

THOMPSON and BATJER, JJ., concur.

GUNDERSON, J., concurring:
I concur in the result.

MOWBRAY, C. J., dissenting:
This Court has previously announced that "[m]eaningful review [of a juvenile court's jurisdictional waiver] requires that the reviewing court should review. It should not be remitted to assumptions . . . . It may not 'assume' that there were adequate reasons, *nor may it merely assume that 'full investigation' has been made.*" Kline v. State, 86 Nev. 59, 61, 464 P.2d 460, 461 (1970), *quoting* Kent v. United States, 383 U.S. 541, 561 (1966) (emphasis added). The majority opinion assumes that a "full investigation" had been made. Since, in my opinion, the record does not support this assumption, I must respectfully dissent.

With respect to waiver proceedings, the juvenile court and the State, acting as *parens patriae* of the juvenile rather than as prosecuting attorney and judge, are engaged in determining the needs of the child and of society rather than adjudicating criminal conduct. Non-criminal treatment within the juvenile system is the rule; adult criminal treatment is the exception. NRS 62.290; Kent v. United States, 383 U.S. at 560. To further the ends of the juvenile system—providing comprehensive, effective, non-criminal treatment for the delinquent juvenile, *id.*— the juvenile department has at its disposal virtually unlimited resources with which to examine the delinquent child and to fashion an appropriate rehabilitative remedy, *see, e.g.,* NRS 62.080, NRS 62.200(1)(b) and (c); NRS 62.300; NRS 62.310.

---

[8]Irrespective of NRS 62.070, which permits the juvenile court to retain jurisdiction of a child until it reaches the age of 21 years, our youth corrections system customarily releases youths committed to its care at age 18.

Thus, while the juvenile court has considerable latitude in determining whether it should retain or waive jurisdiction, its decision must be based on a "full investigation". A "full investigation", in this context, cannot be a mere ritual; rather, it anticipates a thorough examination of the child and his background and a thorough exploration of all alternative strategies of rehabilitation. D.H. v. State, 561 P.2d 294, 298 (Alaska 1977); State v. Gibbs, 500 P.2d 209, 217–18 (Idaho 1972); In re Patterson, 499 P.2d 1131, 1136 (Kan. 1972); United States v. Howard, 449 F.2d 1086, 1090–91 (D.C.Cir. 1971); see also, People v. Chi Ko Wong, 557 P.2d 976, 988 (Cal. 1976); In re Harbert, 538 P.2d 1212, 1217 (Wash. 1975); Haziel v. United States, 404 F.2d 1275, 1279–80 (D.C.Cir. 1968). Only in this manner may the welfare of the juvenile and the interests of society be secured.

While a judge in a criminal prosecution concerns himself solely with the alleged criminal act, the juvenile court judge must focus his attention on the actor: "the juvenile judge must consider the juvenile's past, his future, his mind, and his acts." Miller v. Quatsoe, 332 F.Supp. 1269, 1275 (D.C.Wis. 1971). Thus, the nature of the juvenile's alleged offense is relevant to his present state of development and is one factor to be considered by the juvenile court; but, standing alone, it fails to establish sufficient grounds for waiving jurisdiction. State v. Gibbs, 500 P.2d at 217–18. Obviously, the juvenile court's investigation must extend beyond the alleged criminal acts. D.H. v. State, 561 P.2d at 298.

Once the juvenile court has fully examined the mental and emotional development of the child, the court must then balance these factors against the safety, needs, and demands of society. In re Harbert, 538 P.2d at 1217. In striking this balance, the juvenile court is under a *duty* to utilize its facilities, personnel, and expertise to explore thoroughly all possible alternative dispositions short of waiver. D.H. v. State, *supra;* State v. Gibbs, *supra;* In re Patterson, *supra;* U.S. v. Howard, *supra.*

The "full investigation" in the instant case, in my opinion, falls short of these standards. The probation officer responsible for appellant's "full investigation" testified that he limited his investigation to the circumstances of appellant's alleged criminal acts and to one brief conversation with appellant about his past. The officer admitted that though he went to appellant's home in order to uncover "evidence" of criminal acts, he did not conduct any in-depth interview of appellant's parents. Nor did the officer seek out or question appellant's sister, neighbors, or friends. Though the officer knew that appellant was

employed, he did not interview appellant's employer or co-workers. The officer did not have appellant examined by a psychiatrist. Nor did the officer check with any of appellant's former schools or teachers. In short, the probation officer merely satisfied himself that appellant had committed various "criminal" acts. The so-called "full investigation" extended no further.

Moreover, neither the probation department nor the juvenile court examined what alternative strategies might offer hope to rehabilitate appellant, or what facilities would be necessary to further those strategies. Despite the wide range of alternative dispositions available to the court, see, e.g., NRS 62.200, the only program even mentioned during the waiver hearing was the Nevada Training School. Though the probation officer stated during the hearing that "I don't know that he [appellant] can't benefit from [juvenile] facilities," no further inquiry was made concerning the available facilities or programs and their suitability to appellant's case. Again, in my opinion, this is not the type of "full investigation" contemplated by NRS 62.080.

In sum, I note that the juvenile court's latitude in deciding whether or not to waive jurisdiction presupposes both procedural regularity and compliance with the requirement of a full investigation. Since a full investigation was not made, I would reverse the judgment of the juvenile court and remand the cause for a new waiver hearing to be based upon a thorough examination of both the child and his background and the alternative strategies of rehabilitation available to the court.

Respectfully, I dissent.