**STATE MECHANICAL, INC., Appellant,**

v.

**LIQUID AIR, INC., Appellee.**

Nos. 6145, 6172.

Supreme Court of Alaska.

May 27, 1983.

Paul W. Waggoner, Biss & Holmes, Anchorage, for appellant.

Olof K. Hellen, and Theodora Accinelli, Hellen & Partnow, Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

This is an indemnity case. The primary appeal by State Mechanical is from a judgment based on a jury verdict in favor of Liquid Air (the indemnitor) and against State Mechanical (the indemnitee). State Mechanical argues that the superior court improperly ruled that the jury's conclusion that State Mechanical was actively negligent was a complete bar to its indemnification by Liquid Air. State Mechanical also argues that it was error for the trial court to give a negligence per se instruction based upon provisions of the General Safety Code.

Jay Calhoun was injured in an explosion while working on the construction site of the Seward Marine Laboratory in Seward, Alaska. At the time, Calhoun was cutting pieces of metal track with a "Skil" saw, using a gang box belonging to State Me-

chanical as a saw horse. Evidence established that the gang box had exploded because an acetylene cylinder stored within the box had been leaking, creating a combustible mixture of gas and air within the box.[1] The cylinder had been placed in the gang box three and one-half days before the accident. The gang box was an unventilated, enclosed container about four feet long and two feet deep. State Mechanical employees had placed the cylinder in the box despite a warning label on the cylinder that it was to be kept only in ventilated enclosures. The gang box and its contents, including the acetylene cylinder, belonged to State Mechanical. The cylinder had been manufactured by Liquid Air.

State Mechanical and Liquid Air were sued by Jay Calhoun, along with one other defendant, Luke's Welding Supplies & Steel, the retailer that had sold the cylinder to State Mechanical. State Mechanical cross-claimed against Liquid Air for any recovery assessed against State Mechanical, and for costs and attorney's fees. All three defendants eventually settled with Calhoun. State Mechanical paid $500,000 in settlement, Luke's Welding paid $75,000, and Liquid Air subsequently settled with Calhoun for $130,000. Following these settlements, the only issue litigated at trial was State Mechanical's indemnity cross-claim against Liquid Air.

In its special verdicts the jury found that Liquid Air had not been negligent in pro-

ducing the cylinder, but that the cylinder was defective at the time it left Liquid Air's possession. The jury further found that this defect was a legal cause of Calhoun's injury. With respect to the conduct of State Mechanical, the jury concluded that State Mechanical had been actively negligent in its handling of the cylinder, and that this active negligence was also a legal cause of Calhoun's injury.

Based upon these special verdicts, the superior court ruled that State Mechanical had no right of indemnity from Liquid Air. The superior court rendered judgment in favor of Liquid Air for costs and attorney's fees in the amount of $23,934.79.

## I. THE INDEMNITY CLAIM.

█ State Mechanical's claim for indemnity from Liquid Air is foreclosed by our decision in *Vertecs v. Reichhold,* 661 P.2d 619 (Alaska, 1983), in which we held that no claim for non-contractual implied indemnity would lie between concurrently negligent tortfeasors. *Id.* at 626. Because the jury found that State Mechanical's negligence was a legal cause of Jay Calhoun's injury, State Mechanical is precluded under *Vertecs* from seeking indemnification from its co-tortfeasor Liquid Air. In short, under *Vertecs,* in the absence of a contrary contractual provision, a negligent tortfeasor may not shift its entire loss to a co-tortfeasor.[2]

1. The source of the leak was disputed at trial. State Mechanical attempted to prove that the cylinder had been leaking from the time it left the factory, and that this was the only possible cause of the explosive mixture inside the gang box. Liquid Air, on the other hand, introduced testimony that State Mechanical employees had left the cylinder valve open. The jury concluded that the cylinder had been defective at the time it left the Liquid Air plant.

2. Vertecs Corporation was a subcontractor hired to install foam insulation in a building under construction for the City of Yakutat. Reichhold Chemicals, Inc. provided a portion of the foam Vertecs used in the building. Six years later the building was destroyed in a fire. The City sued both Vertecs and Reichhold alleging that the foam insulation had aggravated the fire damage to the building and that both Vertecs and Reichhold were liable under

theories of negligence, misrepresentation, and strict liability. Vertecs in turn sued Reichhold for contribution and indemnity for any liability of Vertecs to the plaintiffs. Vertecs' argument was that Reichhold had been guilty of "active" negligence, while Vertecs had been guilty only of "passive" negligence. *Vertecs,* 661 P.2d 619, at 619–20.

We held that the presence of any degree of negligence barred a claim for non-contractual indemnity between co-tortfeasors. *Id.* at 619, 626. In so holding, we noted that the legislature had already addressed the problem of concurrently negligent tortfeasors in the Contribution Among Joint Tortfeasors Act, AS 09.16.-010–.060. The contribution statute adopts a plan of pro rata liability among co-tortfeasors regardless of their relative degrees of fault. *See* AS 09.16.020(1). To the extent that an expansion of the common law of indemnity

## II. NEGLIGENCE PER SE INSTRUCTIONS.

State Mechanical claims that the jury finding that it was negligent was the product of improper instructions. Specifically, State Mechanical challenges the negligence per se instruction given by the superior court.[3] First, it challenges the portion of the instruction based on General Safety Code (GSC) § 01.1002(a)(2)(B)(ii), on the grounds that the regulation does not apply to construction sites, and that, even if it does, it has not been enforced, and State Mechanical cannot be charged with knowledge of its provisions. Second, State Mechanical challenges that part of the instruction based upon Compressed Gas Association Pamphlet (CGA) C–6, § 3.4.2.1, on the ground that the cylinder inspection procedure outlined in that section could not have been followed by State Mechanical.

█ The superior court is called upon to conduct a two-step inquiry in determining whether to formulate a negligence per se instruction based upon a statute or regulation.[4] First, it must determine whether the conduct at issue lies within the ambit of the statute or regulation in question, by applying the four criteria set out in the Restatement (Second) of Torts § 286 (1965).[5]

would overlap into and judicially abrogate portions of the contribution act, we are reluctant to create such an expansion. *But see American Motorcycle Ass'n v. Superior Court,* 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (Cal.1978); *Dole v. Dow Chemical Co.,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288, 53 A.L.R.3d 175 (N.Y.1972).

3. Instruction No. 17 provided as follows:

There is a law of the State of Alaska. It provides the following:

"(B) Storage of Cylinders—General.

. . . .

(ii) Inside of buildings, cylinders shall be stored in a well-protected, well-ventilated, dry location, at least 20 feet from highly combustible materials such as oil or excelsior. Cylinders should be stored in definitely assigned spaces away from elevators, stairs, or gangways. Assigned storage spaces shall be located where cylinders will not be knocked over or damaged by passing or falling objects, or subject to tampering by unauthorized persons. Cylinders shall not be kept in unventilated enclosures such as lockers and cupboards."

"Section 01.1002(a)(2)(E)(ii)(h) General Cylinder Handling Precautions. . . .

(h) Cylinder valves shall be closed when work is finished.

3.2.4.1 To check for leaks the cylinder shall be charged and carefully examined. All seams, pressure openings, sharp dents, digs, gouges and pits shall be coated with a soap or other suitable solution to detect the escape of gas. Any leakage is cause for rejection."

If you find that it is more likely than not that a party in this case violated any part of the law I just read to you and that the violation was a legal cause of the accident, then you are required to find that party negligent unless you also find the violation was excused.

A violation is excused if you decide that it is more likely than not that the person committing the violation neither knows nor should

know of the occasion for compliance, or compliance would have involved a greater risk of harm to the party or to other people.

The law of the State of Alaska also provides:

4.2.14. Cylinders should be protected from tampering of unauthorized individuals.

You may consider this provision only as it relates to the issue of whether or not a violation of section (B) above, if you have found such a violation occurred, should be excused.

If you find either that the party in question did not violate the law or its violation was excused, then you should pay no further attention to this law and you should decide whether the party was negligent on the basis of the other instructions I have given you. But if you decide the party committed an unexcused violation of this law, you are then required to find the party negligent.

4. Our prior cases have not distinguished between administrative regulations and statutes for the purposes of negligence per se analysis. *McLinn v. Kodiak Electric Ass'n,* 546 P.2d 1305, 1313 (Alaska 1976); *Breitkreutz v. Baker,* 514 P.2d 17, 20 (Alaska 1973).

5. Section 286 of the Restatement (Second) of Torts (1965) provides:

The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

We adopted the principles expressed in this section in *Ferrell v. Baxter,* 484 P.2d 250, 263

Second, once the trial court has concluded that the statute or regulation applies to the allegedly negligent conduct, the court must further determine whether the rule of law is so obscure, unknown, outdated, or arbitrary as to make inequitable its adoption as a standard of reasonable care. *See McLinn v. Kodiak Electric Association,* 546 P.2d 1305, 1313–14 (Alaska 1976); *Northern Lights Motel v. Sweaney,* 561 P.2d 1176, 1183–84 (Alaska 1977); *Bachner v. Rich,* 554 P.2d 430, 440–41 (Alaska 1979).

The trial court's threshold determination is strictly a legal conclusion, and we will exercise our independent judgment in deciding whether the trial court interpreted the scope of the statute or regulation correctly. We employ a different standard of review as to the trial court's second determination. As indicated previously, once the trial court has concluded that the enactment applies to the allegedly negligent conduct, the superior court may exercise its discretion to refuse to give a negligence per se instruction. Such discretion is limited, being confined to these "highly unusual cases" in which "laws may be so obscure, oblique or irrational that they could not be said as a matter of law" to provide an adequate standard of due care. *Ferrell v. Baxter,* 484 P.2d 250, 260 (Alaska 1971); *see Bailey v. Lenord,* 625 P.2d 849, 855–56 (Alaska 1981). The trial court's disposition of the question of whether the enactment was too vague or arcane to be utilized as a reasonable standard of care will only be reversed on appeal if it constitutes an abuse of discretion.

State Mechanical's first argument goes to the threshold determination made by the superior court that § 01.1002(a)(2)(B)(ii) of the GSC and § 3.2.4.1 of CGA Pamphlet G–6 applied to State Mechanical's handling of the cylinder at the Seward construction site. The applicable standard of review is that of substitution of judgment since applicability is a question of law.

(Alaska 1971). We have held that "the trial judge is vested with discretion in determining, as a matter of law, whether or not to adopt the legislative enactment or administrative regula-

A. Instruction based on General Safety Code § 01.1002(a)(2)(B)(ii).

There is no dispute that employees of State Mechanical placed the acetylene cylinder in an unventilated gang box after work where it remained until the gang box exploded. The superior court gave the jury a negligence per se instruction based upon a GSC regulation that provided that cylinders "shall not be kept in unventilated enclosures ...." GSC § 01.1002(a)(2)(B)(ii). State Mechanical asserts that this regulation does not apply to cylinders being used on construction sites, and that the negligence per se instruction was therefore reversible error.

General Safety Code § 01.1002(a)(2)(B)(ii) provides that:

(B) Storage of Cylinders—General.

. . . .

(ii) *Inside of buildings,* cylinders shall be stored in a well-protected, well-ventilated, dry location, at least 20 feet from highly combustible materials such as oil or excelsior. Cylinders should be stored in definitely assigned places away from elevators, stairs, or gangways. Assigned storage spaces shall be located where cylinders will not be knocked over or damaged by passing or falling objects, or subject to tampering by unauthorized persons. *Cylinders shall not be kept in unventilated enclosures such as lockers and cupboards.*

(Emphasis supplied.)

State Mechanical concedes that the GSC is generally applicable to construction sites. This was established in *Bachner v. Rich,* 554 P.2d 430, 442–44 (Alaska 1976). *See also Dravo Corp. v. Occupational Safety and Health Review Commission,* 613 F.2d 1227, 1234 (3d Cir.1980) (general safety rules complement specific on-site regulations); *Bristol Steel & Iron Works v. Occupational Safety and Health Review Commission,* 601 F.2d 717, 721 (4th Cir.1979) (general safety

tion as the appropriate standard of care." *Bachner v. Rich,* 554 P.2d 430, 440–41 (Alaska 1976) (footnotes omitted). *Accord, Bailey v. Lenord,* 625 P.2d 849, 855–56 (Alaska 1981).

standards fill interstices of specific jobsite regulations). However, State Mechanical goes on to argue that, despite the general coverage of the GSC, this particular regulation applies only to the inside of finished buildings. It bases this argument upon the first three words of the provision, which read: "Inside of buildings . . . ."

Liquid Air responds that the last sentence of the regulation is meant to apply anywhere and that the purpose of the regulation would be destroyed if it were held applicable only to the insides of finished buildings. Liquid Air argues that its reading is based on the clear, unambiguous language of the regulation.

■ We agree with Liquid Air that the entire section should not be limited to the insides of finished buildings. The regulation makes no sense if it can be read to allow storage of cylinders in enclosed containers everywhere except inside finished buildings. While we do not agree with Liquid Air that the provision is unambiguous, this court has recognized in the past that the provisions of the GSC should be given a broad interpretation. *Bachner v. Rich*, 554 P.2d 430, 444 (Alaska 1976); *State v. Marathon Oil Co.*, 528 P.2d 293, 297 (Alaska 1974) (GSC applied to protect not only employees of employer at fault, but other workers on construction sites, as well). *See also Bristol Steel & Iron Works v. Occupational Safety and Health Review Commission*, 601 F.2d 717, 721 (4th Cir.1979) ("Being remedial and preventative in nature, the [Occupational Safety and Health] Act must 'be construed liberally in favor of the workers whom it was designed to protect . . . .' " [citations and footnote omitted] ). We conclude that the superior court properly ruled that GSC § 01.1002(a)(2)(B)(ii) applied to State Mechanical's conduct in this case.

■ State Mechanical makes a further argument that the GSC section was so infrequently applied that State Mechanical was not on notice of its existence. State Mechanical says that the GSC regulation "should not be adopted as a negligence per se standard of care because of the lack of

requisite notice of enforcement to the community." State Mechanical cites no cases, and we have found none, subscribing to a rule of "requisite notice of enforcement."

The apparent thrust of State Mechanical's argument is that the GSC regulation was so obscure that, even if it applied to State Mechanical's conduct in this case, it should not have been made the basis of a negligence per se instruction. At this point, State Mechanical's challenge to the instruction takes on a different character than its previous arguments. There is no longer any question that the regulation applies or that it satisfies the requirements of Restatement § 286. State Mechanical urges that the regulation should not have been adopted as the basis for a negligence per se instruction because of its obscurity.

*Northern Lights Motel v. Sweaney*, 561 P.2d 1176, 1184 (Alaska 1977), established that the trial court has broad discretion to adopt an applicable statute or regulation as a standard of reasonable care even in the face of an argument that the provision was unknown and obscure. The *Northern Lights* court distinguished *McLinn v. Kodiak Electric Association*, 546 P.2d 1305 (Alaska 1976), a case in which the trial court had exercised its discretion in deciding that a statute should not be incorporated into a negligence per se instruction. *See also Bachner v. Rich*, 554 P.2d 430, 440–41 (Alaska 1976); *Ferrell v. Baxter*, 484 P.2d 250, 264 (Alaska 1971). The *Ferrell* court noted that "in our review of . . . laws [challenged on the basis of obscurity] we shall cast a strong presumption in favor of the legislative enactment or regulation." 484 P.2d at 264.

When an obscurity argument is rejected by the trial court, the defendant may still raise it with the jury under the defense of excuse. *Northern Lights*, 561 P.2d at 1185; *Bachner*, 554 P.2d at 445; *Ferrell*, 484 P.2d at 262. This shifts the burden to the defendant to show why compliance was unreasonable. *Northern Lights*, 561 P.2d at 1185. In this case, State Mechanical received the benefit of an instruction on ex-

cuse.[6] Under the legal principles set forth above, we conclude that the inclusion of GSC § 01.1002(a)(2)(B)(ii) in the negligence per se instruction was not an abuse of discretion on the superior court's part.

**B. Instruction based on Compressed Gas Association Pamphlet C-6, § 3.2.4.1.**

Part of Liquid Air's claim that State Mechanical was actively negligent in the Calhoun accident was that State Mechanical did not undertake proper inspection procedures for cylinders in their possession. In particular, § 3.2.4.1 outlined a checking procedure known as a "soap test."

3.2.4.1 To check for leaks, the cylinder shall be charged and carefully examined. All seams, pressure openings, sharp dents, digs, gouges and pits shall be coated with a soap or other suitable solution to detect the escape of gas. Any leakage is cause for rejection.

The standards of CGA Pamphlet C-6 are also set out in the text of GSC § 01.0601 et seq. Section 01.0601(c)(I)(i) is substantially identical to § 3.2.4.1 as reproduced above.

With respect to § 3.2.4.1, State Mechanical again focuses on three words in arguing that the regulation does not apply to its conduct, namely, "the cylinder *shall be charged*" before examination. State Mechanical claims that "the only party who can 'charge' a cylinder is Liquid Air," and so § 3.2.4.1 should not have been made the basis of a negligence per se instruction on the issue of State Mechanical's active negligence. In reply, Liquid Air suggests that the "shall be charged" language "reflects the fact that leaks cannot be detected by [soap] testing unless the cylinder is pressurized with gas, that is 'charged'."

■ Once again, the issue of interpretation of this regulation is not clear-cut. However, we think the instruction was not reversible error for the following reasons. First, State Mechanical offers nothing beyond a bald statement in its brief to prove or to explain that Liquid Air is the only party who can charge a cylinder.[7] Second, Liquid Air's construction of § 3.2.4.1 comports more closely with reality than State Mechanical's reading. State Mechanical's interpretation of § 3.2.4.1 is that a charged cylinder, after leaving the factory, must be *re-charged* before a soap test can be performed. No one has asserted that re-charging is necessary before a soap test. In fact, State Mechanical employee Franz Plagge performed a soap test on the cylinder in this case immediately after the accident, and he did so without re-charging the cylinder. State Mechanical's argument that this regulation did not apply to its conduct because it was unable to comply is therefore unpersuasive. Third, even if § 3.2.4.1 could not have applied to State Mechanical, the instruction was not so misleading as to have prejudiced substantially State Mechanical's case. The instruction based on § 3.2.4.1 does not instruct the jury that State Mechanical was under a duty to soap test. All § 3.2.4.1 does is outline the correct procedure for soap testing. Further, the instruction is applicable to either party in the case. Since State Mechanical introduced evidence at trial that Liquid Air was under a duty to soap test its cylinders before they left the plant, and that Liquid Air's compliance was inadequate, the natural reading of the instruction is that § 3.2.4.1 establishes a basic procedure to be followed by anyone with the duty to soap test. The regulation itself does not establish the duty. Thus, we conclude that the instruction based on § 3.2.4.1 was not error, and even if it constituted error, the giving of this instruction was not prejudicial error.[8]

---

**6.** *See supra* note 2 ("A violation is excused if you decide that it is more likely than not that the person committing the violation neither knows nor should know of the occasion for compliance . . . .").

**7.** State Mechanical's argument comes close to being rejected on the grounds that it has been briefed only in a cursory fashion. *See State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980); *Lewis v. State,* 469 P.2d 689, 691–92 n. 2 (Alaska 1970).

**8.** *Love v. State,* 457 P.2d 622, 630–31 (Alaska 1969).

### III. MISCELLANEOUS CLAIMS BY STATE MECHANICAL.

A. State Mechanical argues that evidence of nonenforcement of GSC § 01.1002(a)(2)(B)(ii) was improperly excluded.

State Mechanical makes a claim of error with respect to its defense of excuse. Apparently the challenge goes to the exclusion of evidence offered by State Mechanical to show that the GSC "regulations were not enforced at a construction site."

■ State Mechanical's entire argument on the excluded excuse testimony comprises one paragraph. Liquid Air cites cases in support of its contention that "[e]vidence of customary practice is not admissible where it is offered for the purpose of excusing or justifying conduct which violates a statutory standard." *American Smelting & Refining Co. v. Wusich,* 375 P.2d 364 (Ariz.1962); *Johnson v. Garnand,* 18 Ariz.App. 191, 501 P.2d 32 (Ariz.App.1972); *Ortega v. Garner,* 218 Cal.App.2d 823, 32 Cal.Rptr. 632 (Cal. App.1963); *Sanchez v. J. Barron Rice, Inc.,* 77 N.M. 717, 427 P.2d 240 (N.M.1967). State Mechanical does not dispute that this is the rule or present any argument that it should not be applied in this case.

The standard of review regarding rulings on admissibility of testimony is one of abuse of discretion.[9] We find no merit in State Mechanical's argument that the trial court abused its discretion in its exclusion of this evidence.

B. State Mechanical argues that noncompliance with CGA Pamphlet C–6, § 3.2.4.1 cannot be active negligence.

■ State Mechanical claims that "the failure to inspect is only passive negligence so it should not bar [an indemnity] claim." Whatever the merits of State Mechanical's

characterization of its conduct as passive negligence, our recent opinion in *Vertecs v. Reichhold,* 661 P.2d 619 (Alaska, 1983), rejects the notion that in the absence of a contrary contractual provision a passively negligent tortfeasor may recover in indemnity from a co-tortfeasor.

The judgment of the superior court is AFFIRMED.

CONNOR, J., not participating.

---

9. *Bailey v. Lenord,* 625 P.2d 849, 854 (Alaska 1981) (expert testimony); *Babinec v. State,* 586 P.2d 966, 968 (Alaska 1978) ("[t]he standard for appellate review of a lower court's decision to exclude testimony is whether it committed a clear abuse of discretion" (footnote omitted)); *D.H. v. State,* 561 P.2d 294, 297 (Alaska 1977) (opinion testimony admitted); *Poulin v. Zart-*

man, 542 P.2d 251, 260 (Alaska 1975) (prejudicial but relevant evidence admitted), *aff'd on reh'g,* 548 P.2d 1299 (Alaska 1975); *Courtney v. Courtney,* 542 P.2d 164, 167 (Alaska 1975) (admission or exclusion of evidence challenged by claim of remoteness within discretion of the superior court).