STATE of South Dakota, Plaintiff
and Appellee,

v.

George LUCKIE, Defendant
and Appellant.

No. 16913.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1990.

Decided Aug. 1, 1990.

Wade A. Hubbard, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

William A. Delaney, III, Northern Hills Public Defender's Office, Deadwood, for defendant and appellant.

WUEST, Chief Justice.

George Luckie (Luckie) appeals from a judgment of conviction for aggravated assault. We affirm.

On May 6, 1989, Luckie went out to dinner with his wife and a neighbor. After dinner, Luckie and his wife took a drive through Lead, South Dakota. They returned to the restaurant where they had dinner, however, when they discovered that Luckie's wife had forgotten her purse there. While at the restaurant, an unidentified teenage girl told Luckie an unnamed individual was going to physically harm Luckie. Luckie and his wife then left the restaurant and were driving home through Deadwood, South Dakota, when they encountered Jeff Kratz (Kratz). According to Luckie, Kratz approached him in a red pickup. The two knew each other from high school. Kratz was apparently upset with Luckie because he believed Luckie had reported Kratz's parties to the police. During this encounter, Kratz yelled at Luckie, inquiring as to whether Luckie was the person who was informing the police of Kratz's parties. Kratz also yelled obscenities at Luckie. After this encounter, Luckie returned to his home.

Luckie met a friend of his, Leeyn Strickland (Strickland), at his home shortly after

the encounter with Kratz. The two, along with Luckie's wife, then left Luckie's home as they intended to purchase some beer at a convenience store. According to Strickland, Luckie also wanted to find Kratz. Before leaving, Luckie retrieved a baseball bat from the back of his pickup truck and placed it in the cab of the truck. Luckie admitted he did this in case he had to use the bat as a weapon if he confronted Kratz.

While proceeding to the convenience store, Luckie encountered Kratz at a stoplight. Luckie shouted Kratz's name and Kratz responded by instructing Luckie to meet him at a nearby parking lot. Luckie proceeded up the street and, several minutes later, returned back to the parking lot where Kratz was located. Upon noticing Luckie, Kratz began to chase him on foot. Luckie, however, fled in his vehicle. As he did so, he caught the attention of a police officer who was in his patrol car. The officer pulled Luckie over. After having been pulled over, Luckie informed the police officer that Kratz was pursuing him with the intent to physically harm him. The officer then informed Luckie to take his wife home and to avoid Kratz for the remainder of the evening. The officer then released Luckie. In spite of the officer's instructions, Luckie drove back past the bank parking lot where Kratz was located. As Luckie proceeded past the lot, he yelled at Kratz to meet him at his home and gave Kratz his address.

On his way home, Luckie told Strickland that he was going to get his gun. Strickland parted company with Luckie shortly after arriving at Luckie's house. Strickland later testified, "I didn't want nothing to do with it ... what he was about to do."

Shortly after Strickland's departure, Kratz appeared at Luckie's house accompanied by several female companions. Unarmed, Kratz proceeded towards Luckie's house by himself. After a few steps, he was noticed by Luckie who was in his house at the time. Upon noticing Kratz, Luckie, with a rifle he had retrieved earlier, allegedly fired two warning shots in the air and then fired several shots directed at Kratz. One shot hit Kratz in the foot and another shot hit him in his knee. After Kratz had been wounded, several of his friends went to his aid. The police were then summoned. Luckie was subsequently arrested and charged with aggravated assault. As a result of this assault, Kratz's left knee required surgery and his foot still contains bullet fragments.

On October 12, 1989, a trial was held to the jury on this charge of aggravated assault. The jury found Luckie guilty of aggravated assault and, hence, a judgment of conviction was entered. On appeal, Luckie requests this Court to order a new trial because he contends the trial court committed two reversible errors regarding the instructions to the jury. First, Luckie contends the trial court erred in refusing to grant his instruction regarding his right to defend himself. Secondly, Luckie contends the trial court erred in instructing the jury regarding the inducement of an attack by a defendant asserting self-defense.

■ We first address the issue of whether the trial court erred in refusing Luckie's instruction regarding Luckie's right to defend himself. At trial, Luckie requested the following self-defense instruction:

Evidence in this case has been introduced that George Luckie shot Jeff Kratz in the belief that he was acting in self-defense. It is lawful to use such force if one is in fact acting in self-defense.

It is the function of the jury to determine whether or not the shooting of Jeff Kratz by George Luckie constitutes self-defense. In making that determination, you should consider George Luckie's conduct in light of his own perception of the situation. His claim of self-defense is to be evaluated in light of all circumstances known to him at the time of the shooting. The reasonableness of George Luckie's use of force against Jeff Kratz is to be evaluated by the jury from his perspective under the facts and circumstances as they appeared to him. In other words, George Luckie's claim of self-defense is based on all the facts and circumstances surrounding the shooting of Jeff Kratz as they appeared to him, so long as those

factors and circumstances were reasonable to him.

If you find that George Luckie was acting in self-defense then you must find him not guilty of aggravated assault.

The trial court refused to give this instruction to the jury. Instead, the following instruction[1] was given:

The kind and degree of force which a person may lawfully use in self-defense are limited by what a reasonable person in the same situation as such person, seeing what he sees and knowing what he knows, then would believe to be necessary. Any use of force beyond that is regarded by the law as excessive. Although a person may believe that he is acting, and may act, in self-defense, he is not justified in using a degree of force clearly in excess of that apparently and reasonably necessary under the existing facts and circumstances.

It is the function of the jury to determine whether or not the shooting of Jeff Kratz by George Luckie constitutes self-defense. His claim of self-defense is to be evaluated in light of all circumstances known to him at the time of the shooting. If you find that George Luckie was acting in self-defense, then you must find him not guilty of aggravated assault.

Luckie contends that the trial court erred in submitting this instruction to the jury, rather than his own, because it improperly applies an objective "reasonable person" standard. In support of his argument, Luckie cites *State v. Dokken*, 385 N.W.2d 493 (S.D.1986).

Luckie's reliance on *Dokken* is misplaced. First of all, *Dokken* concerned the admissibility of evidence regarding a claim of self-defense. There was no issue in *Dokken* regarding whether a particular self-defense instruction should or should not have been given. More significantly, this Court did not reject the objective "reasonable person" standard in *Dokken* as Luckie contends. Rather, we simply held

that certain evidence should not have been excluded at trial because it was relevant to the defendant's claim of self-defense. Luckie correctly notes that in so holding we stated that "the reasonableness of the defendant's use of force is to be evaluated from the defendant's perspective under the facts and circumstances known to the defendant." *Id.* at 502. Contrary to Luckie's argument however, this does not mean that a jury should not be instructed to apply an objective "reasonable person" standard for determining the validity of a defendant's self-defense claim. This statement merely means that when dealing with a self-defense claim, jury members must put themselves in the place of the defendant at the time of the altercation in order to determine if the defendant acted reasonably under the circumstances.[2] Luckie's interpretation of *Dokken*, therefore, is erroneous as *Dokken* does not support his contention that self-defense instructions applying the objective "reasonable person" standard are improper.

This Court has not rejected the objective "reasonable person" standard insofar as self-defense instructions are concerned. To the contrary, we have accepted this standard. In *State v. Jaques*, 428 N.W.2d 260 (S.D.1988), the same self-defense instruction which Luckie now objects to was given to the jury. Appellant argued in *Jaques* the trial court erred in submitting this instruction to the jury because it conflicted with a justifiable homicide instruction also given to the jury. We held no errors were committed by the trial court regarding the submission of these instructions and stated that "the jury was properly instructed to consider the reasonableness of the force applied by the [appellant]." *Id.* at 266. In reaching this conclusion, we reasoned:

The court's instructions, taken as a whole, indicate that the jury could find [appellant] not guilty if he *reasonably*

---

1. The first paragraph of this instruction is taken from South Dakota Pattern Jury Instruction 2–9–8.

2. This very principle is embodied in the instruction given to the jury (i.e. "... what a reasonable person in the same situation as [defendant], seeing what he sees and knowing what he knows, would believe to be necessary.")

believed he was faced with a felony (serious bodily harm) within the dwelling and killed [the alleged perpetrator] to prevent the harm. (Emphasis added.)

*Id.* at 265. The same reasoning applies in the present case. The instructions given by the trial court indicate the jury could find Luckie not guilty if he reasonably believed the force he used was necessary to defend himself. Therefore, as we approved of the self-defense instruction in *Jaques* which applied the objective "reasonable person" standard, we also approve of the same instruction in the present case and hold the trial court did not err in submitting this instruction to the jury rather than Luckie's requested instruction.

■ As a final matter, we note Luckie has failed to show the trial court's denial of his proposed instruction prejudiced him in any manner since it is unlikely the jury probably would have returned a different verdict if his instruction had been given. *State v. Cook,* 319 N.W.2d 809, 814 (S.D. 1982). Conceptually, there is little difference between Luckie's requested instruction and the instruction which was given to the jury. Both instructions require the jury members to evaluate Luckie's claim of self-defense in light of all of the facts and circumstances known to Luckie. Essentially then, the jury members under either instruction are required to put themselves in the position of Luckie at the time of the altercation and then determine whether the acts committed by Luckie were reasonable. Since the two instructions in question do not greatly differ from each other, we cannot conclude that the jury probably would have rendered a different verdict if Luckie's instruction had been given. Therefore, the trial court's refusal to grant Luckie's requested instruction was not prejudicial to Luckie in any manner. For this reason also, we decline to reverse this case on the basis of this issue.

■ As his final argument, Luckie asserts that the trial court erred in instructing the jury on the law concerning inducement of an attack by a defendant. More specifically, Luckie contends the trial court erred in giving two instructions which es-

sentially provide that a person who induces a quarrel leading to a claim of self-defense may either not assert that claim or may only assert it in limited circumstances. Luckie contends these instructions should not have been given because they are not supported by the evidence. We disagree.

Luckie is correct in stating that "a trial court need not instruct on matters that find no support in the evidence." *State v. Huber,* 356 N.W.2d 468, 474 (S.D.1984). Contrary to Luckie's contention however, there is sufficient evidence in the record which indicates Luckie might have induced a quarrel with Kratz which lead to his claim of self-defense. The record clearly reflects Luckie was informed by a police officer to avoid any encounters with Kratz on the night in question. Luckie disregarded the police officer's warning and drove back to the parking lot where Kratz was located. Knowing that Kratz was upset, Luckie shouted out his home address to Kratz as he drove by the parking lot in question. Further, Luckie's friend, Strickland, testified he parted company with Luckie after the two arrived at Luckie's home because "[he] didn't want nothing to do with it ... what [Luckie] was about to do." Luckie contends that he simply wanted to talk to Kratz, and he did not want to harm him. This contention is suspect, however, in light of the testimony of several people who stated Luckie made no attempt to speak with Kratz when Kratz was proceeding towards Luckie's home. Instead, he fired shots at him. All of this evidence tends to suggest that Luckie induced a quarrel with Kratz which lead to his claim of self-defense. Therefore, we conclude the trial court did not err in granting the instructions concerning inducement of an attack by a defendant.

Judgment is affirmed.

All the Justices concur.