In the Matter of the WELFARE of
T. D. S.

No. 49646.

Supreme Court of Minnesota.

Jan. 18, 1980.

William R. Kennedy, Hennepin County Public Defender, Franklin J. Knoll, Gerard W. Snell and W. Bruce Quackenbush, Asst. Public Defenders, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Div., David W. Larson, Thomas A. Weist and Janeen Rosas, Asst. County Attys., Minneapolis, for respondent.

**ROGOSHESKE, Justice.**

T.D.S. appeals from an order of the Juvenile Division of the Hennepin County District Court referring him for adult prosecution on charges of first- and third-degree criminal sexual conduct and kidnapping. The issues raised are: (1) whether the admission of hearsay evidence at a reference hearing in the form of testimony by police officers concerning conversations with the victim and the codefendant was contrary to Minnesota law or in violation of the juvenile's constitutional rights to confrontation or due process; and (2) whether the juvenile's constitutional right to effective assistance of counsel or his statutory right to the attorney-client privilege was violated by allowing the state to call as witnesses at the reference hearing treatment program caseworkers originally contacted by the juvenile. We conclude that the testimony of the officers and the caseworkers was properly admitted and, accordingly, we affirm.

On July 5, 1978, a young woman, 16 years of age, was sexually assaulted near Long Lake in New Brighton. T.D.S., age 17, and a 19-year-old man were arrested following an investigation of the crime. On August 9, 1978, the state filed a petition in juvenile court charging T.D.S. with criminal sexual conduct in the first and third degrees and kidnapping.[1] The state also moved for an order referring T.D.S. for adult prosecution pursuant to Minn.Stat. § 260.125 (1978).[2] T.D.S. waived probable cause and, following

1. Minn.Stat. § 609.342(d) (1978) with reference to §§ 609.05 and 609.11; § 609.342(f) with reference to § 609.05; § 609.344(c) with reference to § 609.05; and § 609.25, subd. 2(1), with reference to § 609.05.

2. Section 260.125 provides:

Subdivision 1. When a child is alleged to have violated a state or local law or ordinance after becoming 14 years of age the juvenile court may enter an order referring the alleged violation to the appropriate prosecuting authority for action under laws in force governing the commission of and punishment for violations of statutes or local laws or ordinances. The prosecuting authority to whom such matter is referred shall within the time specified in such order of reference, which time shall not exceed 90 days, file with the court making such order of reference notice of intent to prosecute or not to prosecute. If such prosecuting authority files notice of intent not to prosecute or fails to act within the time specified, the court shall proceed as if no order of reference had been made. If such prosecuting authority

a hearing, the juvenile court granted the motion for reference, finding that T.D.S. was not amenable to treatment within the juvenile justice system and that he was a threat to the public safety. T.D.S. moved for amended findings or rehearing. Upon the denial of his motions, T.D.S. appealed.

At the reference hearing the basic facts of the offense were presented through the testimony of two police officers. One officer had interviewed the victim, the other had interrogated the codefendant. The two accounts were in substantial agreement and related the following events. At about 1 a. m. on July 5, the young men made random telephone calls, one of which put them in contact with the victim. They informed her that a mutual acquaintance had given them her name and she, doubtful but curious, left the house without her parents' knowledge and met them at a prearranged location. They drove to an isolated spot on Long Lake where the two young men began drinking beer. It is disputed whether the victim engaged in "necking" with either or both of the young men. At some point the victim requested a ride to her home. When the young men indicated that they wanted to finish drinking their beer first, she began to walk.

Both young men pursued the victim after she had walked about 100 yards. They struggled with her, forced her to the ground, and bound her wrists with heating duct tape. The codefendant attempted to remove the victim's slacks but was unsuccessful. T.D.S. then ripped her slacks, partially removed them, and engaged in sexual intercourse with her. During the course of the struggle, the victim saw what she perceived to be a "switchblade knife," which the two young men passed back and forth. One of them used the knife to cut the victim's brassiere, thereby exposing her breasts. The three returned to the van where the victim allegedly was forced to engage in intercourse with the codefendant. Subsequently, T.D.S. ordered the victim to "suck him" and, upon her refusal, said that he could force her. Fearful, she complied. The men then drove the victim to her home.

T.D.S. first contends that the officers' testimony should have been excluded as hearsay under Minn.R.Evid. 802. The state concedes that the evidence is hearsay not within any exception to the rule, but argues that reference hearings are not governed by the Rules of Evidence. Section 260.155, subd. 1, provides that juvenile court "hearings on any matter * * * may be conducted in an informal manner." Section 260.155, subd. 6, provides that the parties at such hearings have a right "to be heard, to present evidence material to the case, and to cross examine witnesses appearing at the hearing." In 1959, when subd. 6 was first enacted, the Interim Commission commented: "The new subdivision is intended to outline the basic rights of the individuals involved in the hearing without codifying the rules of evidence, many of which are inappropriate to the setting and unnecessary in a case tried before a judge rather than a jury."

Juvenile court judges have promulgated rules that more specifically define the conduct of juvenile court proceedings under the statute. Rule 6.8, Hennepin County Juvenile Court Rules, provides: "The court may consider any relevant evidence including hearsay and conclusions, except at trials which are to be governed by the Minnesota

files with the court notice of intent to prosecute the jurisdiction of the juvenile court in the matter is terminated.

Subd. 2. The juvenile court may order a reference only if

(a) A petition has been filed in accordance with the provisions of section 260.131

(b) Notice has been given in accordance with the provisions of sections 260.135 and 260.141

(c) A hearing has been held in accordance with the provisions of section 260.155, and

(d) The court finds that the child is not suitable to treatment or that the public safety is not served under the provisions of laws relating to juvenile courts.

Subd. 3. When the juvenile court enters an order referring an alleged violation to a prosecuting authority, the prosecuting authority shall proceed with the case as if the jurisdiction of the juvenile court had never attached.

Rules of Evidence." The rules adopted by the probate judges having juvenile court jurisdiction take a similar approach. Juvenile Court Rules 6–5 and 8–6 governing dispositional and reference hearings permit receipt of all "material and relevant" evidence "including hearsay and opinion evidence," but Juvenile Court Rule 5–3 states that in an adjudicatory proceeding "[n]o evidence that would be inadmissible in a civil proceeding shall be admitted." The ABA Juvenile Justice Standards Relating to Transfer Between Courts, § 2.2C (Tent. Draft 1977), also treat reference proceedings as dispositional proceedings with respect to evidentiary questions. The ABA Juvenile Justice Standards Relating to Dispositional Procedures, § 2.5 (Tent. Draft 1977), suggest that evidence should be "relevant and material." The comment indicates that hearsay evidence is not objectionable where there are indicia of trustworthiness and where the evidence was not obtained in violation of the juvenile's constitutional rights.

 We agree that a reference hearing is properly distinguished from an adjudicatory hearing. For purposes of the hearing the charges are assumed to be true and the only issues for the court are public safety and the juvenile's amenability to treatment. *In re Welfare of W.J.R.*, 264 N.W.2d 391 (Minn.1978). We conclude that the evidence challenged in this case was relevant and material and that it was sufficiently reliable to be admitted on the issue of public safety.[3] The two accounts of the facts and circumstances of the offense as related by the officers were in substantial agreement, and other evidence introduced concerning investigation of the crime tended to corroborate them. Moreover, the reports of the officers were provided to defense counsel prior to the hearing and the codefend-

ant's statements were disclosed at the hearing. Defense counsel was afforded an opportunity for informed cross-examination of the officers and was free to present witnesses rebutting unfavorable testimony. When hearsay is reliable and an opportunity to dispute it is afforded, application of strict exclusionary rules of evidence to reference hearings would impede both the state and the juvenile in fully advising the court of relevant considerations. We therefore hold that the admission of the officers' hearsay testimony was not contrary to applicable statutes and rules.

T.D.S. next contends that notwithstanding the admissibility of hearsay evidence under applicable statutes and rules, receipt of such evidence is in violation of his constitutional rights to confrontation and due process. In *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the United States Supreme Court held that a District of Columbia statute dealing with reference of juveniles for adult prosecution would be interpreted as entitling a juvenile to a hearing, representation by counsel, access to records and reports considered by the court, and a statement of reasons for the court's decision. These principles were raised to constitutional stature in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). In *Kent*, however, the court restricted the scope of its ruling:

> We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.

383 U.S. at 562, 86 S.Ct. at 1057.

 In our view, neither *Kent* nor *Gault* requires the application of the right of confrontation to reference proceedings. While

---

**3.** In *State v. Hogan*, 297 Minn. 430, 438, 212 N.W.2d 664, 669–70 (1973), this court enumerated some of the factors relevant to public safety:

(1) The seriousness of the offense in terms of community protection; (2) the circumstances surrounding the offense; (3) whether the offense was committed in an aggressive, vio-

lent, premeditated, or willful manner; (4) whether the offense was directed against persons or property; (5) the reasonably foreseeable consequences of the act; and (6) the absence of adequate protective and security facilities available to the juvenile treatment system.

we do not minimize the importance of a reference hearing, the question there decided is whether, upon an adjudication of guilt, a juvenile can be retained within the juvenile justice system with benefit to himself and without danger to the public. Since there is no adjudication of guilt or innocence at the reference proceeding, the full panoply of trial rights is inapplicable. Furthermore, absent unusual circumstances not present here, compliance with the specific requirements of *Kent* satisfies due process.

■■ At the hearing the judge permitted the state to call as witnesses caseworkers from two treatment programs who evaluated T.D.S.'s suitability for their programs at the request of his attorney. Each witness expressed the opinion that T.D.S. was unsuitable for his program, primarily for motivational reasons. T.D.S. argues on appeal that receipt of the caseworkers' testimony denied him effective assistance of counsel and violated his attorney-client privilege. To effectively discharge his role as an advocate in a reference proceeding, a juvenile's attorney should search for a plan which may persuade the court that the welfare of the child and the public safety can be served without reference. *See Kemplen v. Maryland,* 428 F.2d 169, 175 (4th Cir. 1970). Effective counsel thus will often obtain evaluations unfavorable to their clients. We cannot conclude, however, that in a nonadjudicatory context evidence obtained as a result of such diligence must be excluded. First, there can be no chilling effect on an attorney's response to a motion for reference, since if he fails to explore such alternatives he will be ineffective. Second, the soundness of the juvenile court's decision rests on the completeness of the information presented, and, as dispositional programs available to the juvenile court are limited in number, the juvenile could, if the argued-for rule were adopted, prevent use of evaluation evidence by consulting every program. We also are not persuaded that the attorney-client privilege, Minn.Stat. § 595.02, subd. 2 (1978), applies since the caseworkers were not employees of the juvenile's attorney. *See Leininger v.*

*Swadner,* 279 Minn. 251, 156 N.W.2d 254 (1968).

Affirmed.