**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Herbert FLYING HORSE, Defendant and Appellant.**

**No. 16709.**

Supreme Court of South Dakota.

May 16, 1990.

John R. Steele, Aurora County State's Atty., Plankinton, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Robert W. Swank, Stiles, Anderson & Swank, Mitchell, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

This appeal is taken from a Final Judgment of Conviction and Sentence dated May 5, 1989, wherein Appellant Herbert Flying Horse (Flying Horse) was sentenced to imprisonment in the South Dakota State Penitentiary for five (5) years. Also appealed are the Findings of Fact and Conclusions of Law and Order Waiving Juvenile Jurisdiction and Transferring to Adult Court dated May 7, 1987. On appeal, Flying Horse argues that:

(1) The trial court erred in ordering a suspended imposition of sentence and thereafter retaining jurisdiction via recommitment to the State Training School after a transfer to adult court;

(2) The trial court did not have sufficient evidence to warrant a waiver of juvenile jurisdiction and transfer to adult court; and

(3) The trial court committed reversible error by admitting the voluntary statement of the co-defendant (Walth) at the transfer hearing.

—Holding—

We affirm the trial court.

## FACTS

A transfer hearing from juvenile to adult court was held on May 7, 1987 for Flying Horse and Walth. At the time of the hearing, Flying Horse was fifteen (15). Walth was seventeen (17). The transfer hearing was bottomed upon these juveniles escaping from the State Training School in Plankinton, Aurora County, South Dakota, on March 17, 1987, and immediately committing crimes in the Plankinton community. They were charged with First Degree Burglary of a residence in Plankinton, Third Degree Burglary of a garage containing an automobile in Plankinton, and Grand Theft of that automobile. A statement taken by Deputy Dwight DeBoer, Aurora County Sheriff's Department, from Walth linked the juveniles to the burglaries and the grand theft.

At the conclusion of the transfer hearing, the court found the crimes committed by Flying Horse to be serious, violent and willful acts. The court found that Flying Horse had a propensity to leave the State Training School. (This was his third escape). Finally, the court found that "there is no rehabilitative aspect left in the program for these two young men." The court found beyond a reasonable doubt that

it would be in the best interest of Flying Horse and the public to be treated as an adult. At the conclusion of this hearing, the court transferred both juveniles to adult court.

Preliminary hearings were scheduled for both juveniles on June 3, 1987, but both juveniles, under the advice of counsel, waived preliminary hearing. Separate counsel for both juveniles had negotiated a plea bargain agreement. The agreement pertaining to Flying Horse provided that he plead to one count, that being escape, and that the State would then dismiss all remaining charges; the State and Flying Horse would recommend a suspended imposition of sentence specifically conditioned upon Flying Horse being returned to the State Training School and that Flying Horse successfully complete the School's program. On March 14, 1987, Flying Horse entered into this agreement, with the court stressing that he would be returned to court for sentencing if he were a problem for the Training School or society.

On April 7, 1989, Flying Horse appeared in court again on a Petition for Revocation of an Order Suspending Imposition of Sentence. Flying Horse had been returned to the State Training School under the conditions of the suspended imposition of sentence and had been discharged on parole from the School after he had completed its program. Thereafter, Flying Horse was returned to the School as a "parole violator." At the April hearing, Flying Horse was charged with Escape and two counts of Grand Theft alleged to have occurred on March 13, 1989. Prior to this court appearance the State's Attorney and counsel for Flying Horse worked out an agreement whereby Flying Horse would admit to the Petition for Revocation and all new charges pending against him would be dropped, then the court would be free to sentence Flying Horse on the 1987 Escape conviction. Under the advice of counsel, Flying Horse did admit the petition and was sentenced to five (5) years in the South Dakota State Penitentiary.*

## DECISION

■ In this case, we hold a trial judge is empowered, under SDCL 26–11–5, to transfer a repeat child offender to adult (circuit) court, impose a suspended imposition of sentence and thereafter transfer the juvenile to the State Training School.

■ Flying Horse, then a 15 year old boy, was transferred to adult court on four counts: Escape from the State Training School, First Degree Burglary of a residence, Third Degree Burglary of a garage containing an automobile, and Grand Theft of an automobile. Flying Horse has a long history of violence, crime and rebellion. Consequently, the State's effort to rehabilitate him over a long period of time has been to insignificant avail. We base our decision upon SDCL 26–11–5 which provides:

> When a boy or girl under the age of eighteen years shall in any circuit court be found guilty of any crime excepting murder, *the court may, if in its opinion the accused is a proper subject therefor, instead of entering judgment cause an order to be entered that such boy or girl be sent to the state training school.* A copy of such order duly certified by the clerk under the seal of the court shall be sufficient warrant for conveying such boy or girl to the school and for his or her commitment to the custody of the superintendent thereof. (emphasis supplied ours)

Clearly this statute authorizes the trial court to do exactly what it did.

■ Further, we have reviewed the record and hold that the trial court's findings in support of its decision to transfer Flying Horse to adult court are not clearly erroneous. On review, there must be substantial evidence in the record to support the juvenile court's finding that it would be contrary to the best interests of the child or of the public to retain jurisdiction over

---

* Although this does not influence our decision we note that Flying Horse was 17 years of age by April 7, 1989.

the child. *People in Interest of L.V.A.*, 248 N.W.2d 864 (S.D.1976). SDCL 26–11–4 lists seven factors which should be considered when determining whether transfer is appropriate. The statute specifically provides that transfer is at the discretion of the trial court. An abuse of discretion "refers to a discretion exercised to an end or purpose not justified by and clearly against, reason and evidence." *State v. Bartlett*, 411 N.W.2d 411, 413 (S.D.1987). In reviewing the findings and reasons for transfer in this case, we are satisfied that the trial court did not abuse its discretion in determining that there was substantial evidence to support transfer. Since the decision was not clearly against reason and evidence, the trial court did not err in ordering the transfer.

■ Finally, Flying Horse claims that the trial court committed reversible error by admitting the voluntary statement of the co-defendant (Walth) at the transfer hearing, relying upon *State v. Lohnes*, 324 N.W.2d 409 (S.D.1982). However, the difference between *Lohnes* and Flying Horse is clearly distinguishable. In *Lohnes*, the admissions were used against him during the adult criminal proceeding. In Flying Horse, they were used against him during the transfer proceeding.

As such, Flying Horse is not entitled to the suppression of statements allegedly obtained in violation of *Lohnes* at a transfer hearing. The United States Supreme Court has required that *juvenile proceedings* satisfy due process rights. *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). In *Gault*, the Court specifically dealt with the application of certain constitutional rights at delinquency proceedings where an adjudication of delinquency or guilt might result. *Gault* did not involve a transfer hearing. The salient feature of the transfer hearing is that it is not adjudicatory in nature. Rather, SDCL 26–11–4 provides for a transfer of a juvenile offender from the juvenile system to adult criminal court if it is contrary to the best interest of the child or the public for the juvenile system to retain jurisdiction over the child. As the Supreme Court of Washington has said:

"... it is important to keep in mind the exact nature of a juvenile court transfer hearing. Such a hearing does not result in a determination of delinquency * * *; does not result in a determination of guilty as may a criminal trial; and does not directly result in confinement or other punishment as may both a delinquency hearing and a criminal proceeding. In short, the transfer hearing is not an adversary proceeding. Rather, the sole purpose of the transfer hearing, as we have recently said, is to determine 'whether best interests of the child and of society would be served by the retention of the juvenile court authority over him or whether the juvenile, under all the circumstances, should be transferred to be tried as an adult.' [Citation.] We believe that this purpose may best be effectuated by the sound exercise of the juvenile court judge's discretion at an informal hearing, limited of course by the general requirements of due process and fair treatment, but not governed by the strict rules of procedure and evidence applicable at either a criminal trial or at a juvenile court delinquency hearing." *State v. Piche* (1968), 74 Wash.2d 9, 14, 442 P.2d 632, 635–36, *cert. denied* (1969), 393 U.S. 1041, 21 L.Ed.2d 588, 89 S.Ct. 666.

Regardless of the importance of such a hearing to the juvenile, it does not determine guilt or innocence. Rather, the only question to be resolved is that of the appropriate forum to hold a trial on its merits. Accordingly, the question concerning the admissibility of Walth's statements, while relevant at a later proceeding, is not appropriate for resolution at a transfer hearing. We conclude, therefore, that the transfer court did not err by admitting Walth's statements into evidence.

Affirmed.

All the Justices concur.