The People of the State of South Dakota in the Interest of A.D.R., A Child(ren) and concerning T.R.

STATE of South Dakota, Plaintiff and Appellee,

v.

Anthony Don RIOS, Defendant and Appellant.

Nos. 17909, 17911.

Supreme Court of South Dakota.

Considered on Briefs Feb. 9, 1993.

Decided May 5, 1993.

Mark Barnett, Atty. Gen., Sherri Sundem Wald, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Jean M. Cline, Feehan & Cline, Rapid City, for defendant and appellant.

SABERS, Justice.

Anthony Don Rios (Rios) appeals (1) an order transferring all proceedings from juvenile court to adult criminal court, (2) the denial of his proposed justifiable homicide instruction, and (3) his conviction for aggravated assault on insufficiency of the evidence. We affirm.

## FACTS

Rios was born on September 3, 1976. After a history of confrontations with the law beginning at age nine, Rios was charged in the fall of 1991 with First–Degree Rape or Sexual Contact, Aggravated Assault, First–Degree Manslaughter, and Aggravated Assault. All proceedings against Rios were transferred to adult criminal court.

On February 3, 1992, Rios was found guilty of first-degree manslaughter. On February 19, 1992, he was found guilty of aggravated assault. Under an agreement with Rios, the State dismissed the additional aggravated assault charge and the rape or sexual contact charge. Rios received twenty years probation for first-degree manslaughter and eight years in the South Dakota State Penitentiary for aggravated assault. Both convictions are consolidated for appeal.

### 1. Transfer to Adult Criminal Court

■ Rios claims the court erred in transferring the charges to adult criminal court. While it is true that " '[a] transfer hearing is a 'critically important' action determining vitally important statutory rights of the juvenile[,]' " *State v. Harris*, 494 N.W.2d 619, 623 (S.D.1992) (quoting *In re L.V.A.*, 248 N.W.2d 864, 867 (S.D.1977); *Kent v. United States*, 383 U.S. 541, 556, 86 S.Ct. 1045, 1055 16 L.Ed.2d 84, 94 (1966)), it is within the discretion of the trial court to determine whether to transfer juvenile proceedings to adult court. *Id.* at 624.

The transfer of a juvenile to adult court is controlled by SDCL 26–11–4, which provides in part that "the court shall consider only whether it would be contrary to the best interest of the child or of the public to retain jurisdiction over the child." "[T]here must be substantial evidence in the record to support the juvenile court's finding that it would be contrary to the best interests of the child *OR* of the public to retain jurisdiction over the child." *Harris*, 494 N.W.2d at 624 (emphasis in original) (citations omitted). Neither the stat-

ute nor case authority "give controlling consideration to the interests of the child over the interests of the state, or ... the interests of the state over the interests of the child." *Id.* (citations omitted).

SDCL 26–11–4 provides seven factors which *may* be considered by the trial court in determining whether a child should be transferred:[1]

  (1) The seriousness of the alleged offense to the community and whether protection of the community requires waiver;

  (2) Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

  (3) Whether the alleged offense was against persons or property with greater weight being given to offenses against persons;

  (4) The prosecutive merit of the complaint. The state shall not be required to establish probable cause to show prosecutive merit;

  (5) The desirability of trial and disposition of the entire offense in one proceeding when the child's associates in the alleged offense are adults;

  (6) The record and previous history of the juvenile;

  (7) The prospect for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile, if he is found to have committed the alleged offense, by the use of procedures, services and facilities currently available to the juvenile court.

These factors do not

reduce the discretion of the trial judge in transfer hearings, nor was it the intention to create a rigid or cumbersome procedure to be followed by the trial courts in all cases. It is not necessary that evidence be presented on all of these factors at each transfer hearing, or that the trial court ... make express findings

on each factor. A court is not required to consider every one of the listed factors nor is it confined to a consideration of only the listed factors to the exclusion of others. No controlling weight is given to any factor. The court's findings of fact upon which its order is based shall not be set aside upon review unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Harris,* 494 N.W.2d at 624 (citations omitted).

Rios argues that the court erred in failing to evaluate each petition individually, but used the collectiveness of the charges in determining whether to transfer Rios to adult criminal court. The court's decision indicates that it addressed each charge individually and made specific findings in accordance with SDCL 26–11–4.

The court found, as to each individual offense charged, that there was probable cause to believe that Rios committed the offense and that the offense was a serious offense committed aggressively, violently and in a willful manner against a person. The court did not consider motive because no testimony was presented regarding motive nor age or circumstances of adult companions as neither were factors in any of the charges.

     The court transferred the offense of assault at Seventh and Quincy although it found that the offense did not, in and of itself, warrant a transfer. "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by and clearly against, reason and evidence." *Id.* (citation omitted). The transfer court felt that it was "in the best interest of Rios that all of the events remain together in dealing with the allegations." It is clear, from the court's decision, that the three other charges would have been transferred, regardless of the court's determination as to the Seventh and Quincy assault.

---

**1.** This court stated in *"L.V.A.* that these factors fall into two basic areas of consideration: (1) the circumstances of the crime, and (2) the amenability of the juvenile to treatment within the juvenile system. As amended subsequent to

our decision in *L.V.A.,* SDCL 26–11–4 makes no such division.... [W]e do not find such a division necessary." *Harris,* 494 N.W.2d at 624 n. 4 (citation omitted).

We do not find that the "mere presence" of this charge created "an unfair and improper pressure upon the child as regarded all other charges then pending," particularly in light of the fact that this charge, as well as the rape charge, was ultimately dropped by the State. This was not an abuse of discretion.

■ Rios next argues that the court failed to consider the Stipulation for Deferred Prosecution on the rape complaint and the State's delay in handling other allegations against Rios prior to the July 1991 stabbing. Rios claims the stipulation and the prior delay in charging Rios with the Mall and Seventh and Quincy assaults should prevent the State from charging Rios with these crimes.

We find no merit to this argument. According to the plain language of the stipulation, failure on the part of Rios to abide by all state and federal laws during the term of the stipulation would result in the refiling and prosecution of the rape offense. Because Rios failed to comply with the terms of the stipulation, the State was free to charge Rios with rape. Additionally, there is no indication that the State "resurrected" the assault charges for "enhancement" purposes. As noted above, each charge was addressed individually and considered on its own merits.

■ Rios argues that the court abused its discretion by failing to make the necessary, careful determination concerning his amenability to rehabilitation and the availability of same. Rios appears to argue that all forms of juvenile rehabilitation must be exhausted before he can be transferred to adult court. As indicated above, the court was not required to consider all of the factors as outlined in SDCL 26–11–4 in making its decision. SDCL 26–11–4 is not a "rigid or cumbersome procedure" mandating that the trial court consider every factor. *Id.* (citations omitted).

Contrary to Rios' argument, the court made a determination of his amenability to, and the availability of, rehabilitation. Rios has had extensive contacts with law enforcement since age nine including several offenses against persons in an aggressive and violent manner. The court noted that Rios' record since August, 1990 certainly had been intense, even if not extensive.

The court viewed the rehabilitative services available to a juvenile court and determined Rios amenability based upon the testimony of Patsy Howe, Rios' home detention supervisor, Brian Hultman, a Court Services Officer, Judd Thompson, Hultman's supervisor and the Chief Court Services Officer for the Seventh Circuit, Brian Wallin, Director of the Youth Forestry Camp in Custer and Herm Venekamp, Superintendent of the South Dakota State Training School in Plankinton, South Dakota.

According to Howe, Rios was unsupervisable. Hultman testified that Rios' suspended sentence to the State Training School failed to bring Rios' behavior even into minimal compliance and that he considered Rios a high risk. Thompson testified that placing Rios on probation had been unsuccessful and Wallin testified that he considered Rios a serious risk to the public's safety. The court found that the evidence supported these statements and opinions.

The court examined the rehabilitative services available in a juvenile court, including court services at a local level, the Youth Forestry Camp, State Training School, Human Services Center, and the possibility of out-of-state placement at a medium security facility. In doing so, the court determined home detention failed to provide a sufficiently rehabilitative environment and Rios did not appear to be a proper candidate for either the Youth Forestry Camp or the State Training School. The court found both facilities lacking in the security necessary to properly house someone with such a violent background. The average length of stay was only 265 days at the camp and 210 days at the school and jurisdiction would cease when Rios reached age twenty-one.

■ The court considered out-of-state placement at a medium security facility and noted that out-of-state placement became a reality, only in very rare occasions, because

of the alternative care budget. While out-of-state placement, in a medium security facility may be the optimum rehabilitative program for Rios, "[t]he court may consider the 'procedures, services and facilities *currently* available.' SDCL 26–11–4(7) (emphasis added). Neither SDCL 26–11–4 nor our cases prohibit consideration of the cost of out-of-state treatment of a juvenile." *Id.* at 626.

The court did not specifically address the Human Services Center. "Neither the statute nor our decisions have required the court to find that the juvenile unsuccessfully exhausted the resources of this state's juvenile justice rehabilitation programs prior to transferring proceedings to adult court." *Id.* at 625. As the court noted, trial in the adult system did not preclude parole at the local level through court services, the Human Services Center and placement at the State Training School as available forms of rehabilitation.

Therefore, there is substantial evidence in the record to support the court's findings and reasons for transfer. Rios has not shown that the trial court abused its discretion. *Id.* at 627 (citations omitted).

### 2. Jury Instruction on Justifiable Homicide

■ Rios claims that the trial court erred in denying his proposed jury instruction on justifiable homicide and self-defense. Rios claims the justifiable homicide instruction given to the jury failed to incorporate the subjective test of reasonableness. While this court has stated:

[T]he reasonableness of the defendant's use of force is to be evaluated from the defendant's perspective under the facts and circumstances known to the defendant[,] ... this does not mean that a jury should not be instructed to apply an objective "reasonable person" standard for determining the validity of a defendant's self-defense claim.

. . . .

This [c]ourt has not rejected the objective "reasonable person" standard insofar as self-defense instructions are con-

cerned. To the contrary, we have accepted this standard.

*State v. Luckie,* 459 N.W.2d 557, 559 (S.D. 1990). Jury Instruction No. 23 provided in part:

The Defendant, however, must have acted upon an honest and reasonable conviction of necessity and a good faith belief that the decedent intended to kill or seriously injure him. The defendant having such an honest and reasonable apprehension of such danger may act to defend himself in such manner and with such means *as may seem to him* reasonably necessary in view of the circumstances. The kind and degree of force which a person may lawfully use in defense of himself is limited by what a reasonable person in the same situation as such person, *seeing what he sees and knowing what he knows,* then would believe to be necessary.

(Emphasis added.) The jury was instructed to view the reasonableness of Rios' actions from an objective perspective. This instruction accurately addressed the test for justifiable homicide and self-defense. It provided that the jury could find Rios "not guilty if he reasonably believed the force he used was necessary to defend himself." *Id.* at 560. The trial court did not err in denying Rios' subjective instructions. *Id.*

### 3. Aggravated Assault

■ After his manslaughter conviction, Rios entered into an agreement with the State for a court trial on aggravated assault on facts stipulated from the preliminary hearing and the transfer hearing. Rios retained the right to appeal the transfer order and the State agreed to dismiss the remaining charges against him. Rios was found guilty of aggravated assault.

Rios argues that the evidence was insufficient to convict him of aggravated assault. "In determining the sufficiency of the evidence on appeal, the question is whether there is evidence in the record which, if believed by the ... court as fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In making such a determination, this court will accept that evidence and the most reason-

able inferences that can be fairly drawn therefrom which will support the verdict." *State v. LaCroix*, 423 N.W.2d 169, 170 (S.D.1988).

The aggravated assault charge stemmed from an incident at the Rushmore Mall in Rapid City on April 6, 1991. According to the unrefuted testimony of Glen Huddleston (Huddleston) at the transfer hearing and preliminary hearing, Rios approached Huddleston who was sitting on a bench inside the Mall. After being told by Huddleston to "Get out of my face," Rios brandished a lock-blade knife and, while poking Huddleston in the chest and in the side with the knife, called him a "big pussy". After hitting Huddleston in the nose, Rios told Huddleston that "If any of your friends want to jump in, I'll stick you." Rios then hit Huddleston a second time. Huddleston sustained a bloody nose, was scared and got up from the bench and called for security. Rios ran off.

"The gravamen of the offense [of aggravated assault[2]] is the *attempt* to put a person in fear of imminent serious bodily harm. Actual fear of imminent serious bodily harm is not an essential element of the offense." *Id.* (emphasis in original) (citation omitted). Rios brandished a knife and poked Huddleston in the chest and the side. These actions and his statement that he would "stick" Huddleston if any of his friends jumped in, were sufficient to show that Rios attempted, by physical menace with a deadly weapon, to put Huddleston in fear of imminent serious bodily harm.

Affirmed.

MILLER, C.J., and WUEST, HENDERSON and AMUNDSON, JJ., concur.

---

2. SDCL 22-18-1.1(5) provides in part:

Any person who:

. . . .

(5) Attempts by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm;

is guilty of aggravated assault. Aggravated assault is a Class 3 felony.