STATE of South Dakota, Plaintiff and Appellee,

v.

Corey Edward MILK, Defendant and Appellant.

No. 18483.

Supreme Court of South Dakota.

Considered on Briefs April 27, 1994.

Decided July 6, 1994.

Mark Barnett, Atty. Gen., Patricia J. Froning, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

· Jeff Larson, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

WUEST, Justice.

Corey Edward Milk (Milk) appeals claiming the order of the circuit court transferring his case from juvenile to adult court was in error. We reverse in part and affirm in part.

### FACTS

Milk is a minor male whose date of birth is January 6, 1977. Milk has a history of contacts with the juvenile justice system in South Dakota. At the age of eleven, Milk was alleged to be a child in need of supervision (ChINS) and was ordered to be placed in shelter care at the Threshold Shelter Care Program. In March 1990, Milk was adjudicated delinquent on a simple assault charge. In July 1991, he was adjudicated delinquent on a charge of injury to property in the third degree for breaking a window at his mother's house. Thus, although there have been other referrals and probation violations, and Milk has been placed at both McCrossan's Boys Ranch and the South Dakota State Training School, he had—prior to the incidents arising in this case—only two delinquency adjudications for offenses that both would have been misdemeanors if committed by an adult.

In November 1992, the State filed a ChINS petition alleging that Milk was beyond the control of his parents or guardians and was unamenable to parental control. A temporary custody hearing was held on November 16, 1992 and the court ordered that Milk be held in the temporary custody of Threshold Youth Services. Milk failed to appear for a dispositional hearing three days later; thus, Judge Kean issued a warrant of

arrest, ordering that Milk be placed in the Minnehaha County Juvenile Detention Center (JDC) when he was located. Milk was located and on November 25, 1992 a hearing was held on the allegation that Milk was a child in need of supervision as well as probation violations. The court determined that the allegations were true and correct and sentenced Milk to serve ninety days at the JDC. On January 12, 1993, the State filed a petition alleging Milk had committed three counts of burglary in the third degree under SDCL 22–32–8 and one count of burglary in the second degree under SDCL 22–32–3.[1] On January 15, 1993, another petition was filed alleging that Milk had committed aggravated assault on a juvenile corrections officer under SDCL 22–18–1.1(3). On February 9, 1993, a petition was filed alleging a separate third degree burglary offense committed by Milk.

On February 20, 1993, shortly after noon, a disturbance occurred at the JDC involving Milk and two other juveniles. The juveniles threw plastic chairs, overturned foosball and ping-pong tables, and broke off broom handles to use as weapons to keep staff and law enforcement away. When a deputy moved toward Milk (along with other officers) Milk took one downward swing with the broom handle. The broom handle hit the deputy in the corner of the eye and the shoulder. The deputy stated that after he was hit, "I had a

little blood, but that's about all." The deputy did not seek medical attention. The deputy's glasses were on his lapel; the glasses were knocked off and broken. Based on these actions, Milk was charged in a delinquency petition with aggravated assault on a law enforcement officer under SDCL 22–18–1.1(3), intentional damage to property under SDCL 22–34–1, and attempted escape under SDCL 22–11A–1 and –2.

The State filed motions to transfer the entire matter[2] to adult court. A transfer hearing was held, and the court found prosecutive merit on the intentional damage to property, aggravated assault, and four burglary charges,[3] and found that it would be contrary to the best interests of Milk and of the public for the juvenile court to retain jurisdiction over Milk.

A court trial was held on the aggravated assault and intentional damage to property charges. Milk was found guilty on the aggravated assault charge.[4] The court issued a judgment and sentenced Milk to a suspended four-year penitentiary sentence upon various conditions. Milk raises two issues.[5]

## I. DID THE LOWER COURT ERR IN RULING THAT HEARSAY IS ADMISSIBLE EVIDENCE AT A TRANSFER HEARING?

■ At the transfer hearing, Milk objected to admission of certain hearsay testimony

1. The transfer court set forth the following conclusion of law as to the burglary charges: "That there is prosecutive merit and/or probable cause as to the four counts of Burglary on November 18, 1992[.]"

2. The State's initial transfer motion was filed on February 8, 1993, and involved the burglary and aggravated assault charges. On February 23, 1993, the State filed a supplementary motion to include transfer regarding the charges stemming from the February 20 incident at the JDC.

3. Milk was arraigned and entered pleas of not guilty to the burglary charges on May 24, 1993; however, the record does not indicate the disposition of the burglary charges.

4. At the conclusion of the trial held to the court, the trial judge held that with regard to the intentional damage to property charge that "all of the elements have been proved except for the value that we have been arguing about here[.] ... I'm seriously concerned about that.... And I think the only concern that I would have is whether or

not it was over $500 or under $500 and between $100 and $500, which would mean the difference between a felony and a class I misdemeanor. So then I will actually reserve the judgment on the [intentional damage charge] for a 48–hour period[.] ... Otherwise I would find then that it was the lesser included, which would have been the Class I misdemeanor of 100 to $500." Milk waived his right to delay sentencing on the aggravated assault charge, and the court proceeded with sentencing. The record contains no indication of any further disposition on the intentional damage to property charge.

5. In Milk's brief, he states that he "appeals the whole of the transfer to adult court, the judgment of guilt, and the sentence of the Court pursuant to SDCL 23A–32–2." However, Milk presents only the two issues discussed herein. Failure to comply with the rules of appellate procedure "is a waiver of all issues not raised, briefed and argued." *Graham v. State*, 328 N.W.2d 254, 255 n. 2 (S.D.1982).

of two witnesses. Evidentiary rulings of the court are reviewed under an abuse of discretion standard. *Zens v. Chicago, Milwaukee, St. Paul and Pac. R.R. Co.*, 479 N.W.2d 155, 159 (S.D.1991) (citations omitted). *See State v. Christopherson*, 482 N.W.2d 298, 300 (S.D. 1992).

The first line of hearsay came in the testimony of Detective Don Satterlee (Satterlee) of the Sioux Falls Police Department. The purpose of Satterlee's testimony was to link Milk to a number of burglaries with which he was charged. Satterlee had not personally investigated the burglaries, nor had he interviewed any of the victims. The knowledge that Satterlee had of the burglaries was based on his reading of reports that had been prepared by investigating officers, which officers were not called to testify. Milk objected to these portions of Satterlee's testimony as hearsay; the court overruled the objections.

. The second item of hearsay objected to by Milk was an exhibit prepared by juvenile probation officer Chuck Wildes (Wildes). Wildes testified that he "sat down one night when there was nobody around" with an unofficial file regarding Milk, and "went through the whole case and kind of did the whole file, did a synopsis of it just to give me a grasp of what was contained in the file and for quick reference—mainly for my reference." Wildes prepared a list, and noted every referral from the police department, including numerous items on which there was never any official action, adjudication or disposition. The list was prepared to assist Wildes in his testimony. Milk objected to admission of the exhibit, claiming it was a hearsay violation. The court overruled, stating that the exhibit would be allowed as a "business report." We note that in finding of fact IV, the court referred to this exhibit as, "Corey Milk's *juvenile record*, which record was introduced and received during the Transfer hearing[.]" (Emphasis added.)

"Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted." SDCL 19–16–1(4). Hearsay is not admissible except as provided by law. SDCL 19–16–4.

■ The State argues that the rules of evidence are not strictly applicable in a juvenile transfer hearing. SDCL 19–9–14 provides, however, that the South Dakota Rules of Evidence "apply to all actions and proceedings in the courts of this state." One of the eight listed exceptions to the general applicability of the rules is, "Disposition hearings in juvenile court." SDCL 19–9–14(7). SDCL 26–7A–1(17) defines a "dispositional hearing" as "a hearing *after adjudication* at which the court makes an interim or final decision in the case."[6] Since transfer hearings take place *before* adjudicatory hearings—not after—they cannot be characterized as "dispositional" under our statutory scheme. Although this court has stated that transfer hearings are "not adjudicatory in nature," we have *not* held that transfer hearings are dispositional, a position urged by the dissent. *State v. Flying Horse*, 455 N.W.2d 605, 608 (S.D.1990). Further, such a holding is not warranted under our statutory scheme, which specifically provides that dispositional hearings are held "after adjudication." SDCL 26–7A–1(17). Juvenile transfer hearings are clearly *not* included among the listed exceptions to the application of South Dakota Rules of Evidence. *Id.* Hearings held for the purpose of determining whether a juvenile matter should be transferred to adult court are "proceedings" held in the circuit courts of this state; thus, the rules of evidence are applicable.

Further, we have noted that a juvenile transfer hearing, "is a ' "critically important" action determining vitally important statutory rights of the juvenile[.]' " *In re L.V.A.*, 248 N.W.2d 864, 867 (S.D.1977) (citing *Kent*

---

6. SDCL 26–7A–87 further describes the nature of dispositional hearings under our statutory scheme. A reading of SDCL 26–7A–87 clarifies that the "dispositional phase of the proceedings" follows the order of adjudication. An interim or final dispositional decree may address "custody, placement, care, shelter or detention of the child[.]" *Id. See* SDCL 26–7A–88 (providing guidelines for the court after adjudication and before disposition). Again, because transfer hearings occur before adjudication, they cannot be dispositional under South Dakota's statutory scheme.

*v. United States*, 383 U.S. 541, 553, 86 S.Ct. 1045, 1053, 16 L.Ed.2d 84, 93 (1966)). *See State v. Harris*, 494 N.W.2d 619, 623 (S.D. 1993). We refuse to expand the list of exceptions to the applicability of the rules of evidence to include juvenile transfer hearings.

The dissent presents authority from other states in support of the argument that hearsay evidence should be admissible at juvenile transfer hearings. Rather, citation of this authority serves to support the argument that the decision to admit hearsay at juvenile transfer hearings should be made via the legislative or rulemaking process. Each of these other states have made legislative or rulemaking decisions that allow for hearsay evidence at such hearings.[7] The state-by-state variations in statutory scheme are revealed through examination of statutory or case law from these other jurisdictions. *See, e.g.,* ARIZ.R.CRIM.PRO. 5.4(c) (under which juvenile transfer hearings are conducted, and providing that, "The finding of probable cause shall be based on substantial evidence, which may be hearsay in whole or in part" including written reports of experts, documentary evidence without foundation and testimony of witnesses concerning declarations of others); CAL.WELF. & INST.CODE § 707 (providing that the determination of "fitness" of a juvenile for adult court is based in large part on a written report of the juvenile's probation officer detailing an investigation of the behavioral patterns and social history of the minor); HAW.REV.STAT. § 571–22(b)(5)–(6), (b)(8) (directing the transfer court to consider: "The sophistication and maturity of the minor as determined by consideration of the minor's home, environmental situation, emotional attitude and pattern of living.... The record and previous history of the minor including previous contacts with the family court, other law enforcement agencies, courts in other jurisdictions, prior periods of probation to this court, or prior commitments to juvenile institutions.... All other relevant matters."); ILL.COMP.STAT. ANN. 705 ILCS 405/5–22(1) ("All evidence helpful in determining [the transfer question under ILL.COMP.STAT.ANN. 705 ILCS 405/5–4(3)(b)] including oral and written reports, [which] may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing."); IND.CODE ANN. § 31–6–2–4 (directing the juvenile court to make a "full investigation" in making the transfer determination); IOWA CODE § 232.-45(5) ("At the waiver hearing all relevant and material evidence shall be admitted."); KAN. STAT.ANN. § 38–1636(e) (directing the court to consider, in part "[T]he number of alleged offenses unadjudicated and pending ... the previous history of the [juvenile], including ... any other previous history of antisocial behavior or patterns of physical violence ... the sophistication or maturity of the [juvenile] as determined by consideration of the [juvenile's] home, environment, emotional attitude, pattern of living or desire to be treated as an adult; ... written reports and other material relating to the [juvenile's] mental, physical, education and social history[.]"); MICH.R.EVID. 1101(b)(7) (providing that the rules of evidence "do not apply ... [to] (7) Juvenile court proceedings."); *In re Welfare of T.D.S.*, 289 N.W.2d 137 (Minn.1980) (citing MINN.STAT.ANN. § 260.155(1) which provides that "juvenile court 'hearings on any matter ... may be conducted in an informal manner.'" and quoting Hennepin County Juvenile Court Rule 6.8 ("The court may consider any relevant evidence including hearsay and conclusions[.]"); NEV.REV.STAT. § 62.080 (directing the juvenile court to make a "full investigation"); OHIO REV.CODE ANN. § 2151.-26(A)(1)(c) (directing the transfer court to make "an investigation, including a mental and physical examination of the child made by a public or private agency or a person qualified to make the examination ... and consideration of all relevant information and factors[.]"); WASH.REV.CODE ANN. § 13.40.110 (limiting juvenile transfer to felony crimes only, and directing the court to consider, "the relevant reports, facts, opinions and arguments presented by the parties and their counsel."); WIS.STAT. § 48.299(4)(b) ("Hearsay evidence may be admitted [in a juvenile proceeding] if it has demonstrable circumstantial guarantees of trustworthiness.").

---

**7.** While we refer to these proceedings as "transfer" hearings, some states refer to these procedures as "certification," "waiver" or "reference" hearings.

Thus, the statutory scheme of each of these states is materially different from our own, and reflects a legislative or rulemaking decision on evidence to be used at a transfer hearing.

Particularly instructive is the case and statutory history from Connecticut and New Hampshire. In the case of *In re Ralph M.*, 211 Conn. 289, 559 A.2d 179 (1989), the state supreme court decided that the language of the statute in question did not contain a clear exclusion of hearsay evidence in juvenile transfer hearings. 559 A.2d at 188. The 1990 Connecticut General Assembly clarified that question for the courts when it amended the statute to explicitly provide that at transfer hearings, "the child shall have the right ... to confront the witnesses against him. The procedures provided in section 54–46a shall apply at such hearing[.]" CONN.GEN. STAT. § 46b–126 (referencing CONN.GEN.STAT. § 54–46a, which provides in pertinent part that, "The court shall be confined to the rules of evidence[.]")

In a 1989 case, the New Hampshire Supreme Court considered the question of whether hearsay evidence was admissible in a juvenile transfer hearing. *New Hampshire v. Nicholas H.*, 131 N.H. 569, 560 A.2d 1156, 1158 (1989). The court stated:

> In the absence of a clear and specific exemption, we hold that *the rules of evidence apply to juvenile certification hearings.* Accordingly, we conclude that the hearsay statements [of a witness] were inadmissible and that the district court improperly considered them in making its finding of prosecutive merit under [N.H.REV.STAT.ANN. § 169–B:24—the juvenile transfer statute].

*Nicholas H.*, 560 A.2d at 1158 (emphasis added). The reasoning expressed by the New Hampshire Supreme Court follows that expressed in this opinion. The *Nicholas* court explained:

> According to Rule 802 [our SDCL 19–16–4] hearsay evidence is inadmissible unless it otherwise falls within an exception. Rule 1101(b) [our SDCL 19–9–14] makes the rules of evidence applicable to all "criminal proceedings unless otherwise provided by

> the constitution or statutes of the State of New Hampshire or these rules."

560 A.2d at 1158. Thus, in reviewing rules of evidence quite similar to our own, the New Hampshire Supreme Court determined that juvenile transfer (certification) hearings do not fall within any listed exception. Subsequent to the *Nicholas* decision, New Hampshire's Rules of Evidence were specifically amended to provide that the rules of evidence "do not now apply to juvenile certification proceedings." *See In re Eduardo L.*, 136 N.H. 678, 621 A.2d 923, 930 (1993). This same rationale should apply in the instant case; that is, *until and unless our rules of evidence specifically exempt juvenile transfer hearings from the requirements of the rules of evidence, we similarly hold that the rules of evidence do apply to juvenile transfer hearings.*

The circuit court's ruling, allowing hearsay evidence to be used in a juvenile transfer hearing, was an abuse of discretion. We reverse the circuit court's ruling and hold that hearsay evidence is not admissible in a juvenile transfer hearing.

## II. DID THE CIRCUIT COURT ABUSE ITS DISCRETION IN DECIDING TO TRANSFER MILK TO ADULT COURT?

 SDCL 26–11–4 provides in pertinent part:

> The circuit court may, *in its discretion*, in any case of a delinquent child, after transfer hearing, permit such child to be proceeded against in accordance with the laws that may be in force in this state governing the commission of crimes, petty offenses or violation of municipal ordinances. In such cases the petition filed under chapter 26–8 shall be dismissed. The hearing shall be conducted as hereinafter provided.

> At the transfer hearing, the court shall consider only whether it would be contrary to the best interest of the child or of the public to retain jurisdiction over the child.

> The following factors may be considered by the court in determining whether a child should be transferred: (1) The seriousness of the alleged offense to the community and whether protection of the com-

munity requires waiver; (2) Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner; (3) Whether the alleged offense was against persons or property . with greater weight being given to offenses against persons; (4) The prosecutive merit of the complaint. The state shall not be required to establish probable cause to show prosecutive merit; (5) The desirability of trial and disposition of the entire offense in one proceeding when the child's associates in the alleged offense are adults; (6) The record and previous history of the juvenile; (7) The prospect for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile, if he is found to have committed the alleged offense, by the use of procedures, services and facilities currently available to the juvenile court. . . .

If the court finds that a child should be held for criminal proceedings . . . the court shall enter an order certifying to that effect. The order shall contain findings of fact upon which the court's decision is based. *The findings shall not be set aside upon review unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. . . .*

SDCL 26–11–4 (1977) (emphasis added). Thus, the statute sets out that the decision to transfer is within the discretion of the court. *See State v. Rios,* 499 N.W.2d 906, 907 (S.D. 1993) (citing *Harris,* 494 N.W.2d at 624) ("[I]t is within the discretion of the trial court to determine whether to transfer juvenile proceedings to adult court."). "An abuse of discretion 'refers to a discretion exercised to an end or purpose not justified by and clearly against, reason and evidence.'" *Flying Horse,* 455 N.W.2d at 608 (quoting *State v. Bartlett,* 411 N.W.2d 411, 413 (S.D.1987)). " '[T]here must be substantial evidence in the record to support the juvenile court's finding that it would be contrary to the best interests of the child *OR* of the public to retain jurisdiction of the child.'" *Rios,* 499 N.W.2d at 907 (citing *Harris,* 494 N.W.2d at 624) (emphasis original) (citations omitted)).

As directed by SDCL 26–11–4, the circuit court entered an order, as well as findings of fact and conclusions of law upon which the decision to transfer Milk was based. In regard to the seven factors listed in SDCL 26–11–4, we have stated that, " 'It is not necessary that evidence be presented on all of these factors at each transfer hearing, or that the trial court must make express findings on each factor.'" *Harris,* 494 N.W.2d at 624 (quoting *In re D.M.L.,* 254 N.W.2d 457, 459 (S.D.1977)). Controlling weight is not given to any one factor, and the court is not "confined to a consideration of only the listed factors to the exclusion of others." *Id.* (citing SDCL 26–11–4; *D.M.L.,* 254 N.W.2d at 459–60; *L.V.A.,* 248 N.W.2d at 869–70).

We have reviewed the entire record in this case. Even without the testimony that should properly have been excluded as hearsay, the determination of the court to transfer the matter is supported by "substantial evidence." *Rios,* 499 N.W.2d at 907. In reviewing the findings of the court, and giving due regard to the opportunity of the trial court to judge the credibility of the witnesses, we cannot say that the findings of the court were clearly erroneous. SDCL 26–11–4. "Since the decision was not clearly against reason and evidence, the trial court did not err in ordering the transfer." *Flying Horse,* 455 N.W.2d at 608.

The order of the circuit court transferring the matter to adult court is affirmed.

SABERS and AMUNDSON, JJ., concur.

MILLER, C.J., and HENDERSON, J., concur in part and dissent in part.

MILLER, Justice (concurring in part and dissenting in part).

I dissent as to the majority's conclusion that hearsay evidence is not admissible at a juvenile transfer hearing.

Juvenile dispositional proceedings are fundamentally different from juvenile adjudicatory proceedings and criminal actions. A transfer hearing does not result in a determination of delinquency, it does not result in a determination of guilt, and it does not result in confinement or other punishment. The purpose of the transfer hearing is not to

adjudicate but to determine whether retention of the child in the juvenile system is in the best interests of the child and the public. I agree with Justice Blackmun who said in *McKeiver*:

> Concern about the inapplicability of exclusionary and other rules of evidence ... chooses to ignore, it seems to us, every aspect of fairness, concern, of sympathy, and of paternal affection that the juvenile court system contemplates.
>
> If the formalities of the criminal adjudicatory process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it.

*McKeiver v. Pennsylvania*, 403 U.S. 528, 550–51, 91 S.Ct. 1976, 1989, 29 L.Ed.2d 647, 664 (1971).

In *Kent*, the Supreme Court considered the procedural requirements for transfer of a juvenile to an adult criminal court.

> We conclude that an opportunity for a hearing, which may be informal, must be given the child.... We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.

*Kent v. United States*, 383 U.S. 541, 561–62, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84, 97–8 (1966) (citing *Pee v. United States*, 274 F.2d 556, 559 (D.C.Cir.1959)). Thus, the Court left it to the states to determine the evidentiary standard to be applied at juvenile transfer proceedings.

In my opinion, the rules of evidence are not applicable in juvenile transfer hearings in South Dakota. The purpose of a transfer hearing is to determine whether retention in the juvenile system is in the best interest of the child or the public. *State v. Harris*, 494 N.W.2d 619, 624 (S.D.1993); *State v. Flying Horse*, 455 N.W.2d 605, 608 (S.D.1990). To that end the transfer court may consider the factors listed in SDCL 26–11–4, although it is not required to consider each one nor is it limited to considering only the listed factors. *Harris*, 494 N.W.2d at 624; *In re D.M.L.*, 254 N.W.2d 457, 459 (S.D.1977). There was no "intention to create a rigid or cumbersome procedure to be followed by the trial court in all cases." *D.M.L.*, 254 N.W.2d at 459.

In *Flying Horse*, we held that a juvenile transfer hearing is "not adjudicatory in nature." 455 N.W.2d at 608. In that decision, we cited the Supreme Court of Washington which found that transfer hearings were "'not governed by the strict rules of procedure and evidence applicable at either a criminal trial or at a juvenile court delinquency hearing.'" *Id.* at 608 (quoting *State v. Piche*, 74 Wash.2d 9, 442 P.2d 632, 636 (1968), *cert. denied*, 393 U.S. 1041, 89 S.Ct. 666, 21 L.Ed.2d 588 (1969), *overruled on other grounds, McRae v. State*, 88 Wash.2d 307, 559 P.2d 563 (1977)); *see also, In re M.W.*, 374 N.W.2d 889, 896 (S.D.1985) (Henderson, J., concurring in result) (in dependency and neglect dispositional hearings "'the rules of evidence contained in SDCL chs. 19–9 to 19–18, inclusive do not apply in dispositional hearings in juvenile court.' [applying former SDCL 26–8–30] A law-trained mind, with experience, should be able to understand why the Legislature has adopted two standards for the application of the rules of evidence. A higher degree of proof and greater accuracy and reliability should be required in the proof during an adjudicatory hearing. It is understandable that strict rules of evidence should apply. When dispositional hearings are at hand, the rules may be relaxed to the extent of determining the best interests of the child and the various opinions that arise as to the alternatives available to a trial judge."); *In re C.J.H.*, 371 N.W.2d 345 (S.D.1985).

Our sister states have determined the strict rules of evidence do not apply to juvenile transfer hearings. *State v. Wright*, 456 N.W.2d 661, 662 (Iowa 1990) ("hearsay evidence is admissible if it is relevant and material"); *People v. Williams*, 111 Mich.App. 818, 314 N.W.2d 769, 771 (1982) ("[t]he purpose of Phase 2 is to determine whether the interests of the child and the public would best be served by retaining or waiving juris-

diction. Therefore, this hearing can be characterized as dispositional ... The significance of this is that information which would not be admissible as evidence in an adjudication may be brought before the court to enable it to conduct a 'full investigation' on disposition of a child."); *In re Welfare of T.L.J.*, 495 N.W.2d 237 (Minn.App.1993); *In re Welfare of T.D.S.*, 289 N.W.2d 137, 140 (Minn.1980) ("application of strict exclusionary rules of evidence to reference [transfer] hearings would impede both the state and the juvenile in fully advising the court of relevant considerations"); *Welfare of S.R.J. v. State*, 293 N.W.2d 32, 35–36 (Minn.1980) ("reference hearings are dispositional hearings not governed by the strict rules of evidence."); *In Interest of P.A.K.*, 119 Wis.2d 871, 350 N.W.2d 677 (1984); *D.H. v. State*, 76 Wis.2d 286, 251 N.W.2d 196, 205 (1977) ("Several states that have dealt expressly by statute or rule of court with the matter of evidence at waiver hearings have similarly concluded that the application of rigid rules, including the rules of evidence, would be more likely to impair the juvenile court's ability to deal fairly with a particular problem than to lead to a just result.").

Similarly, the conclusion that the rules of evidence are not applicable in juvenile transfer proceedings is supported by case law in numerous other jurisdictions which have considered the question. *Matter of Pima Co.*, 26 Ariz.App. 46, 546 P.2d 23 (1982); *People v. Chi Ko Wong*, 18 Cal.3d 698, 135 Cal.Rptr. 392, 557 P.2d 976 (1976), *overruled on other grounds, People v. Green*, 27 Cal.3d 1, 164 Cal.Rptr. 1, 609 P.2d 468 (1980); *In re Dinson*, 58 Haw. 522, 574 P.2d 119 (1978); *State v. Christensen*, 100 Idaho 631, 603 P.2d 586 (1979); *In re Wolf*, 99 Idaho 476, 583 P.2d 1011 (1978); *People v. Taylor*, 76 Ill.2d 289, 29 Ill.Dec. 103, 391 N.E.2d 366 (1979); *Jonaitis v. State*, 437 N.E.2d 140 (Ind.App. 1982); *Marvin v. State*, 95 Nev. 836, 603 P.2d 1056 (1979); *In re Eduardo*, 136 N.H. 678, 621 A.2d 923 (1993); *State v. Gibbs*, 126 N.H. 347, 492 A.2d 1367 (1985); *State v. Carmichael*, 35 Ohio St.2d 1, 64 O.O.2d 1, 298 N.E.2d 568 (1973), *cert. denied*, 414 U.S. 1161, 94 S.Ct. 922, 39 L.Ed.2d 113 (1974); *In re Harbert*, 85 Wash.2d 719, 538 P.2d 1212 (1975).

An examination of South Dakota statutes dealing with juvenile proceedings also supports the determination that the rules of evidence do not apply in juvenile transfer proceedings. In interpreting statutes we apply the following rules of statutory construction:

> Each statute must be construed according to its manifest intent as derived from the statute as a whole, as well as other enactments relating to the same subject. Words used by the legislature are presumed to convey their ordinary, popular meaning, unless the context or the legislature's apparent intention justifies departure. Where conflicting statutes appear, it is the responsibility of the court to give reasonable construction to both, and to give effect, if possible, to all provisions under consideration, construing them together to make them harmonious and workable. However, terms of a statute relating to a particular subject will prevail over general terms of another statute. Finally, we must assume that the legislature, in enacting a provision, had in mind previously enacted statutes relating to the same subject.

*Harris*, 494 N.W.2d at 622 (citing *Meyerink v. Northwestern Public Service Co.*, 391 N.W.2d 180, 183–84 (S.D.1986) (citations omitted)).

SDCL 19–9–14 exempts juvenile dispositional hearings from the strict rules of evidence applicable to other court procedures. SDCL 19–9–14 provides in part:

> Except as otherwise provided in this section, chapters 19–9 to 19–18, inclusive, apply to all actions and proceedings in the courts of this state. Those chapters ... do not apply in the following situations:
>
> . . . . .
>
> (7) Disposition hearings in juvenile court.

SDCL ch. 26–7A on juvenile court procedure clearly states that the rules of civil procedure apply in juvenile adjudicatory hearings. However, it then expressly provides a different standard for dispositional

and all other juvenile court hearings. SDCL 26–7A–34 provides:

Hearings under this chapter and chapters 26–8A, 26–8B and 26–8C shall be conducted as follows:

(1) Adjudicatory hearings shall be conducted in accordance with rules of civil procedure under chapter 15–6, except as otherwise provided in this chapter; and

(2) Dispositional hearings *and all other hearings shall be tried to the court and shall be conducted and designed to inform the court fully of the exact status of the child and to ascertain the history, environment and past and present physical, mental and moral condition of the child and of the child's parents, guardian or custodian.* (Emphasis added.)

Further guidance concerning the applicability of the rules of evidence in juvenile proceedings is found at SDCL 26–7A–56 which declares that the rules of evidence apply in adjudicatory hearings but goes on to set forth a different standard for all other juvenile hearings. SDCL 26–7A–56 provides in part:

Except as otherwise provided in this chapter and related chapters 26–8A, 26–8B and 26–8C, the rules of civil procedure and the rules of evidence apply to adjudicatory hearings. *All other hearings shall be conducted under rules prescribed by the court. The rules may be designed by the court to inform the court fully of the exact status of the child and to ascertain the history, environment and the past and present physical, mental and moral condition of the child and the child's parents, guardian and custodian, as may be necessary or appropriate to enable the court to determine suitable disposition of the child according to the least restrictive alternative available in keeping with the child's best interests and with due regard for the rights and interests of the parents, guardian, custodian, the public and the state.* (Emphasis added.)

Additionally, the transfer hearing statute directs the court to consider a "laundry list" of factors as to whether transfer is appropriate. SDCL 26–11–4 provides in part:

At the transfer hearing, the court shall consider only whether it would be contrary to the best interest of the child or of the public to retain jurisdiction over the child.

The following factors may be considered by the court in determining whether a child should be transferred:

(1) The seriousness of the alleged offense to the community and whether protection of the community requires waiver;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

(3) Whether the alleged offense was against persons or property with greater weight being given to offenses against persons;

(4) The prosecutive merit of the complaint. The state shall not be required to establish probable cause to show prosecutive merit;

(5) The desirability of trial and disposition of the entire offense in one proceeding when the child's associates in the alleged offense are adults;

(6) The record and previous history of the juvenile;

(7) The prospect for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile, if he is found to have committed the alleged offense, by the use of procedures, services and facilities currently available to the juvenile court.

Written reports and other materials relating to the child's mental, physical, and social history may be considered by the court, provided that the person or persons who prepared the report and other material shall appear and be subject to both direct and cross-examination.

Further support is found by examining the last paragraph of SDCL 26–11–4. Because the rules of evidence are not applicable in a transfer hearing, and therefore statutes such as the business records exception of SDCL 19–16–10 do not apply, the transfer statute requires that, before reports and other materials are considered by the court, the person

who prepared the material must be available for questioning and cross-examination. If the rules of evidence were applicable, there would be no need to provide another standard for admissibility of written materials in transfer hearings.

When viewed in harmony, the above statutes show a clear intent to apply different procedural rules in adjudicatory hearings as opposed to all other hearings conducted in juvenile court. In an adjudicatory hearing, the safeguards of the rules of evidence are necessary because a child may be determined delinquent, found guilty and deprived of his or her liberty. This differs considerably from a transfer hearing where the court is charged with making a decision in the child's and the public's best interest. *Harris,* 494 N.W.2d at 624; *Flying Horse,* 455 N.W.2d at 608.

I agree the circuit court did not abuse its discretion in deciding to transfer Milk to adult court, but dissent as to the majority's conclusion that the rules of evidence are applicable in a juvenile transfer hearing.

I am authorized to state that Justice HENDERSON joins in this concurrence in part and dissent in part.